## In re BOLTON HALL NURSING HOME (and Related Cases Under Joint Administration).

### No. 76–1395–S.

United States District Court, D. Massachusetts.

May 20, 1977.

William F. McCarthy, Ropes & Gray, Boston, Mass., Anthony M. Feeherry, Boston, Mass., with whom Henry B. Shepard, Jr., Jon D. Schneider, Evan Jones, and Goodwin, Proctor & Hoar, Boston, Mass., were on brief, for appellants.

Barry M. Portnoy, Boston, Mass., with whom J. Christopher Robinson, and Sullivan & Worcester, Boston, Mass., were on brief, for debtor-appellees.

Daniel M. Glosband, Goldstein & Manello, Boston, Mass., for trustee-appellees.

MEMORANDUM AND ORDER

SKINNER, District Judge.

The debtors in this combined chapter XI and chapter XII bankruptcy proceeding are related entities in the nursing home business in Connecticut, Massachusetts and New York and several individuals owning controlling interests. The petitions are being jointly administered pursuant to Bankruptcy Rule 117(b), adopted for chapters XI and XII by Bankruptcy Rules 11–14 and 12–14. The appellants are seven banks holding first mortgages on eleven nursing homes and Abraham Schultz, the second mortgagee of several debtors.

The appeal is from the bankruptcy court's findings and conclusion that the petitions were filed in good faith and its order, entered on November 8, 1976, allowing the proceedings to continue. "Good faith" is a condition to the confirmation of an arrangement under chapters XI and XII. §§ 366(4), 472(4), 11 U.S.C. §§ 766(4), 872(4). Unlike chapter X, § 141, 11 U.S.C. § 541, however, chapters XI and XII do not expressly condition the continuation of proceedings on a finding that the petition has been filed in good faith. Nevertheless, good faith is an implicit prerequisite to the continuation of proceedings under both chapters. See In re Colonial Realty Inv. Co., 516 F.2d 154, 160–61 (1st Cir. 1975) (ch. XII).

The appellants contend that the bankruptcy court's findings are clearly erroneous, see Bankr. Rule 810, and that improper standards were applied to the good faith determination. The appellants argue that if a petitioner is to establish the feasibility of reorganization, it must demonstrate that the debtor can pay current operating expenses; that it can pay current real estate taxes and debt service; that it can manage the operations at a profit; and that the value of the debtor's assets exceeds mortgage debt. In addition, the appellants contend that the bankruptcy court erred in considering the issue of good faith jointly as to all debtors rather than making individual determinations.

Although neither chapter XI nor chapter XII defines good faith, chapter X contains the following definition:

Without limiting the generality of the meaning of the term "good faith", a petition shall be deemed not to be filed in good faith if—

. . . . .

(3) it is unreasonable to expect that a plan of reorganization can be effected

. . . . .

§ 146, 11 U.S.C. § 546. The Court of Appeals in Colonial adopted a similar definition in the context of chapter XII. 516 F.2d at 160–61.* Good faith is put in issue

* In a footnote, 516 F.2d at 161 n. 12, the Court of Appeals cautioned against confusing the standard good faith determination with the more limited determination to be made "at the earli-

by the motion of a secured creditor, *see id.* at 160, but the petitioner has the burden of establishing good faith. *Marine Harbor Properties, Inc. v. Manufacturers Trust Co.,* 317 U.S. 78, 83–85, 63 S.Ct. 93, 87 L.Ed. 64 (1942).

 Chapters XI and XII favor arrangement rather than liquidation, and the good faith "test should not bar approval of a petition unless it is abundantly clear that there is no possibility that a [successful arrangement] can be effected." *A-Cos Leasing Corp. v. Wheless,* 422 F.2d 522, 525 (5th Cir. 1970) (ch. X); *see In re Colonial Realty Inv. Co.,* 516 F.2d at 160; *In re Southern Land Title Corp.,* 301 F.Supp. 379, 409 (E.D.La.1968) (ch. X). A reorganization proceeding should not continue if the debtor is "absolutely insolvent"—if it has no assets and is not doing business. *In re Ware Metal Prods., Inc.,* 42 F.Supp. 538, 541 (D.Mass.1941) (ch. X). Moreover, courts have found good faith lacking in petitions filed by debtors whose earnings could not satisfy mortgage debt service and whose assets were valued at less than mortgage indebtedness. *See In re Holi-Penn, Inc.,* 535 F.2d 841, 847–48 (3d Cir. 1976) (ch. X); *In re Hartsdale Associates,* 2 Bankr.Ct. Dec. 1275, 1277 (S.D.N.Y.1976) (ch. XII). However, chapters XI and XII were intended for the use of insolvent debtors, *see* §§ 323, 423, 11 U.S.C. §§ 723, 823, and debtors without equity in their property. *See, e. g.,* §§ 406(1), 407, 11 U.S.C. §§ 806(1), 807. In order to establish good faith, therefore, a debtor need not demonstrate as a matter of law that it can satisfy its obligations as they mature or that its assets exceed first mortgage indebtedness. *In re Southern Land Title Corp.,* 301 F.Supp. at 409–11; *see In re Bermec Corp.,* 445 F.2d 367, 368 (2d Cir. 1971) (per curiam) (ch. X).

 In determining whether the value of a debtor concededly in present financial straits is such that a successful arrangement is reasonably possible, the emphasis should be on the debtor's prospects for the future.

> Such value is only lacking when the future earning power of the debtor is so bleak in comparison with its financial requirements that there is no possible chance of reorganizing the debtor as a viable corporation.

*In re Southern Land Title Corp.,* 301 F.Supp. at 410; *see In re Bermec Corp.,* 445 F.2d at 368.

 These good faith standards, reflective of a preference for arrangement over liquidation and applied in the context of chapter X, are even more appropriate under chapters XI and XII. The provisions for confirmation of an arrangement in chapters XI and XII are more liberal than their counterparts in chapter X. Confirmation of a plan of reorganization in a chapter X proceeding is subject to the "absolute priority rule," under which a junior class of creditors participates only after a more senior class receives full compensation for its claims. This prerequisite to confirmation, embodied in the statutory terms of art "fair and equitable," is notably absent from the provisions of chapters XI and XII, thus improving the chances of a successful arrangement. *See In re Pine Gate Associates,* 2 Bankr.Ct. Dec. 1478, 1481–82, 1486–87 (N.D.Ga.1976) (ch. XII). *Compare* § 221, 11 U.S.C. § 621, *with* §§ 366, 472, 11 U.S.C. §§ 766, 872.

 The bankruptcy court did not err, therefore, in rejecting the standards for the good faith determination proffered by the appellants. Further, there is ample support for the bankruptcy court's findings in the form of documentary evidence submitted and testimony given at the good faith hear-

est possible time" that secured creditors would probably benefit from charging the income of secured properties with centrally-incurred administrative costs. The bankruptcy court inquired into both the good faith issue and the propriety of certain interim borrowing and pooling of income orders at one hearing held on August 31 and September 1, 1976. The interim orders were affirmed by this court in a memorandum entered on January 19, 1977. Based as it was on the more limited determination mandated by *Colonial,* that affirmance does not dispose of this appeal from the bankruptcy court's finding of good faith.

ing. A court-appointed trustee testified that although a few nursing homes had cash flow problems, he knew of no reason why any of the debtors could not effect a successful arrangement. Transcript, Aug. 31, 1976, at 41–73; cf. § 146(3), 11 U.S.C. § 546(3). The debtors presented testimony concerning the homes' good reputation in the industry for high quality facilities and unique services, which might reasonably be expected to attract a greater proportion of private patients thus generating more income in the future. Transcript, Aug. 31, 1976, at 90–133. In addition to this testimony generally applicable to all debtors, the bankruptcy court received financial reports concerning each particular debtor submitted as exhibits to the affidavit of Michael K. Takesian, employed by the trustees and receivers as comptroller for all debtors. The financial data consisted of balance sheets, monthly income statements for the post-petition period, appraisals performed during the years 1973–75 and tentative lists of indebtedness.

One subject of controversy at the hearing was the potential effect of an arrangement on the per diem rate paid by the Massachusetts Department of Welfare in accordance with a cost reimbursement formula established by the Massachusetts Rate Setting Commission. Generally, reimbursement for mortgage interest payments is included as a component of the rate. An interim rate is first prepared based on unaudited information supplied by the operator. The Commission then adjusts the interim rate after auditing actual expenses during a relevant period. The appellants contended at the hearing that any restructuring of secured debt as a result of an arrangement would be vitiated by the Commission's recapture of excessive interim rates.

In order to resolve the controversy, the bankruptcy court heard the testimony of Mr. John Lively, Director of Accounting Policy for the Commission. Mr. Lively testified that generally, if interest is accrued as an expense but the mortgagee later forgives the interest, the Commission would disallow the prior payment. He conceded, however, that the Commission has had no similar experience in the context of a bankruptcy proceeding and that he was extremely unsure whether the Commission's general policy would apply to an arrangement approved pursuant to the Bankruptcy Act. Transcript, Sept. 1, 1976, at 3–55. The bankruptcy court so observed and justifiably assumed that the state would not thwart an arrangement confirmed by the court.

■ Although the finding of good faith is one of ultimate fact or a mixed conclusion of law and fact, it remains subject to the "clearly erroneous" standard of review, see Bankr. Rule 810, unless the bankruptcy court relies solely on documentary evidence. In re Holi-Penn, Inc., 535 F.2d 841, 844–45 (3d Cir. 1976). The bankruptcy court's reliance on the testimony at the good faith hearing in its findings that the debtors' present income and their prospects for increasing their earnings in the future established a reasonable possibility of a successful arrangement was not clearly erroneous. The financial data submitted to the court concerning each debtor support this conclusion.

The bankruptcy court acknowledged that holding the good faith hearing as early in the proceedings as it did placed certain limits on its determination. The court declined to accept at face value the appraisals performed during the years 1973–75 and taken from the files of Medico Associates, Inc., one of the debtors. Independent appraisals were in progress at the time of the hearing. Until the receipt of current appraisals, the court could not definitively determine the extent to which the creditors were secured and the extent of the debtors' equity. See Findings of Fact, paragraph 13; Conclusions of Law, paragraphs 3, 5, 9; Transcript, Aug. 31, 1976, at 134–41. The bankruptcy court was faced with an obvious dilemma in a complicated reorganization proceeding involving numerous debtors and properties. Accurate and complete financial data are typically unavailable within a relatively short time following the filing of petitions, and yet it is in the interest of

secured creditors to address the good faith issue as soon as possible. In light of these conflicting interests, the documentary evidence before the bankruptcy court, including the monthly income statements and the older appraisals, sufficiently established that the value of the debtors was such that successful arrangements were feasible.

■ The appellants contend nonetheless that the bankruptcy court erred in treating the petitions as though they had been substantively consolidated by finding good faith jointly as to all debtors rather than making individual determinations for each petition. *See* Conclusions of Law, paragraph 4. Both the testimony at the hearing and the court's subsequent findings were indeed of a general nature. The financial data submitted to the court, however, portrayed the economic viability of each nursing home. Moreover, the bankruptcy court expressly singled out five debtors whose income appeared to be less than most and demanded additional evidence as to those homes. Findings of Fact, paragraph 9; Order, Nov. 8, 1976. The court's generalized findings, based on testimony concerning common issues and individualized financial reports, "ensure that the reviewing court is informed of the basis of the lower court's decision" on the good-faith filing of each petition within the meaning of Bankruptcy Rule 752(a). *See In re D. H. Overmyer Co.,* 510 F.2d 329, 333 (2d Cir. 1975).

Affirmed.