**In the Matter of MALLARD ASSOCIATES, a Limited Partnership.**

**Nos. 78 Civ. 5522, 78 B 1901.**

United States District Court,
S. D. New York.

Jan. 25, 1979.

Trubin Sillcocks Edelman & Knapp, New York City, for Greenwich Savings Bank by Lola S. Lea, New York City.

Norman Klasfeld, New York City, Gerald & Lawrence Blumberg, New York City, Co-Counsel for debtor by Norman Klasfeld, and Lawrence S. Blumberg, New York City.

## OPINION

ROBERT L. CARTER, District Judge.

This is an appeal from Bankruptcy Judge Joel Lewittes's denial of a secured creditor's motion to dismiss a debtor's Chapter XII petition for an arrangement. Judge Lewittes's oral order was based on a holding that good faith in filing a petition is not a prerequisite to a debtor's proceeding under Chapter XII of the Bankruptcy Act.

The facts pertinent to the appeal are these:[1] In October, 1977, a secured creditor, Greenwich Savings Bank, commenced a proceeding in New York State court to foreclose its mortgage upon property located at 45 West 45th Street. Since Greenwich sought to extinguish existing lease-holds, the tenants were notified of the action and named as defendants. Two of the principal tenants, a textile company owned by Benjamin Solomon and a motion picture sound studio owned by Robert J. Hopkins, began negotiating with the bank to preserve their leaseholds. By April, 1978, it became clear that no agreement would be reached. Thereafter, Greenwich contracted to sell the property to SJK Realty Corp. at such time as the bank may purchase it at a foreclosure sale.

On September 5, 1978, Solomon and Hopkins purchased 45 West 45th Street from the owners for $10,000,[2] taking title in the name of 4545 Realty Corp., a nominee corporation owned by them. On September 13, 1978, Greenwich moved in the pending state proceeding for summary judgment of foreclosure. Solomon and Hopkins then formed a limited partnership, Mallard Associates, whose general partner is 4545 Realty Corp. and whose limited partners are Solomon and Hopkins. Further discussions about Solomon's and Hopkins's businesses' remaining in the building, now between Mallard Associates and the bank, again led nowhere. On October 25, 1978, Mallard filed its petition for an arrangement under Chapter XII of the Bankruptcy Act. Greenwich moved to dismiss the petition. Judge Lewittes's denial of the motion on the ground that good faith in filing a petition is not a condition for Chapter XII proceedings prompted the instant appeal.

■ Whether good faith is required when initially filing a Chapter XII petition is a narrower question than first appears. The parties agree that Chapter XII requires that the debtor later present its *proposal* in good faith. 11 U.S.C. § 872(4). They also agree that Chapter XII, unlike Chapter X,[3]

1. Since Bankruptcy Judge Lewittes declined to hold a hearing on the debtor's good faith, no findings of fact were presented to this court. The statement of facts here is based solely on briefs submitted by the parties. Although an attempt has been made to recite only uncontested facts, it is possible that disputed facts have been stated as though they were proven. Nothing said herein is intended to preclude the parties from showing otherwise in the hearing on remand.

2. We note that the wide disparity between the purchase price and the fair market value of the premises is relevant to the issue of Mallard's good faith.

3. 11 U.S.C. §§ 541–544 require the judge to dismiss petitions not filed in good faith regard-

does not require that the judge, *sua sponte*, review the bona fides of the petition before allowing the action to proceed. The bank asserts, however, and the debtor denies that *upon motion of a secured creditor, prior to the submission of a plan of arrangement*, a debtor in a Chapter XII proceeding must show that his petition was filed in good faith or suffer dismissal of the action.

Support for the proposition that the debtor's good faith is not at issue until after the submission of a plan comes from the language of Chapter XII and the interpretation of that language in *Sumida v. Yumen*, 409 F.2d 654 (9th Cir. 1969). Where Chapter X has an explicit requirement that the judge initially determine the bona fides of a petition, Chapter XII is silent. The omission gains significance from the following provision, which introduces each separate chapter of the current Bankruptcy Act:

> The provisions of this chapter shall apply exclusively to proceedings under this chapter.

11 U.S.C. §§ 501, 701, 801. Thus the debtor argues that the statutory scheme of Chapter XII simply does not contemplate dismissal of a petition for lack of good faith until the judge is required by 11 U.S.C. § 872(4) to review the plan of arrangement.

On the strength of the statutory language, the Ninth Circuit in *Sumida v. Yumen*, 409 F.2d 654 (9th Cir. 1969), reversed a district court's dismissal of a Chapter XII petition filed in bad faith because the dismissal came too early in the process. The Court of Appeals remanded for further proceedings, saying:

> "Good faith" is considered by a court in a Chapter XII proceeding only after the plan has been approved by creditors and confirmation is requested by the debtor.

409 F.2d 659.

The First Circuit's opinion in *In re Colonial Realty Investment Co.*, 516 F.2d 154 (1st Cir. 1975), contradicts the strict holding of *Sumida*. The court in *Colonial Realty* held that a preliminary determination that the Chapter XII proceeding is likely to ben-

efit, or at least not harm, the secured creditor must precede an order charging to the property the debtor's costs of maintaining the action. After mandating this preliminary hearing, the court continued:

> Within a reasonable time, however, upon motion of a secured creditor, the court should conduct hearings adequate to determine whether the petition of the debtor has been filed in good faith, and whether there is a sufficient possibility of a successful arrangement to justify whatever risk to the collateral of the secured parties may be entailed.

516 F.2d 160–61. By asking that the court consider whether there is a sufficient *possibility* of a successful arrangement, the court clearly showed that it contemplated a hearing on the debtor's bona fides *before* the plan was actually presented, approved, and submitted for confirmation.

Bankruptcy Judges Norton and Cyr have attempted to confine the consequences of the holding in *Colonial Realty*. In *In the Matter of Samoset Associates*, 3 Bankr.Ct. Dec. 393 (D.Maine 1977), Judge Cyr concluded that the preliminary hearings mandated by *Colonial Realty* were intended to provide a secured creditor with an avenue to dismiss a debtor's petition only where either:

> 1) the debtor delays in filing a plan (and therefore sets back the good faith inquiry that follows submission of a plan), or
>
> 2) the debtor's exigencies make it impossible to offer the creditor sufficient procedural protection for his secured interest during the pendency of the proceeding.

3 Bankr.Ct. Dec. 395. In his treatise, Judge Norton offers an even more restrictive interpretation of *Colonial Realty*. After citing *Sumida* for the proposition that lack of good faith in filing a Chapter XII petition is not a proper ground for dismissal, he notes:

> . . . *In re Colonial Realty Investment Co.*, 516 F.2d 154 (1st Cir. 1975),

less of whether a motion to dismiss is made. *In re Colorado Trust Deed Funds, Inc.*, 311 F.2d

288 (10th Cir. 1962); *cf. A–Cos Leasing Corp. v. Ingraham*, 408 F.2d 492 (5th Cir. 1969).

gives some indication, purely dictum, of a contrary view . . . . A closer inspection of that opinion shows, however, that the court was not speaking of good faith in relation to the initial filing of the petition, but rather at a later date, presumedly at the time of presenting the arrangement, or following an elapse of unreasonable time without a proposed plan.

Norton, Real Property Arrangements, Part 14, § 1. Thus Judge Norton would read *Colonial Realty* to mandate hearings only in Judge Cyr's first class of cases.

At least one District Judge, however, has read *Colonial Realty* to totally reject the rule espoused in *Sumida*. In *In re Bolton Nursing Home*, 432 F.Supp. 528 (D.Mass. 1977), Judge Skinner interpreted *Colonial Realty* to hold that good faith is an "implicit prerequisite to the continuation of proceedings" under Chapter XII. *Id.* at 530. On motion of a secured creditor, prior to the submission of a plan, full hearings were held on whether the petition had been filed in good faith. The test of good faith applied by Judge Skinner was whether it was abundantly clear, when the petition was filed, that there was no possibility of a successful arrangement. *Id.* at 531. Thus the path was left open for secured creditors in any Chapter XII proceeding to obtain a preliminary hearing by raising the issue of the debtor's bona fides.

■ Although it is not apparent to this court why the result reached by Judge Skinner is so studiously avoided by Judges Cyr and Norton, the instant case does not require a decision on which approach is preferable. There is now widespread agreement that *Colonial Realty* rejects the prophylactic rule of *Sumida; some* circumstances merit dismissal of a Chapter XII petition filed in bad faith before the submission of a plan. Regardless of whether the correct rule is that a secured creditor is *always* entitled to a preliminary hearing or

is so entitled only in select situations, it seems that the creditor in this case is entitled to such a procedure.

■ The crux of the creditor's claim of bad faith is that the debtor fraudulently invoked the jurisdiction of the bankruptcy court by creating, solely for the purpose of filing a Chapter XII proceeding, a limited partnership whose sole asset is a property about to be foreclosed upon.[4] It seems particularly appropriate to allow raising the issue of fraudulent jurisdiction as soon as the petition is filed because waiting for the plan to be submitted serves no useful purpose. The content of the plan is not determinative of whether the debtor has fraudulently invoked the jurisdiction of the court. Where a determination of good faith depends upon whether a successful plan could possibly be formulated, judicial economy may justify delaying the hearing until an actual plan is presented. But where, as here, the claim of bad faith does not depend upon such a determination, delaying the hearing would be, at best, a useless formality and, at worst, an action highly prejudicial to the secured creditor's legitimate interests.

Even Judge Norton, who seemed the most supportive of a rule that prohibited the creditor's raising the issue of good faith until the submission of a plan, appears to allow an exception for cases where "the extent of the bad faith of the debtor may affect the jurisdictional integrity of the court." Norton, *supra*, Part 14, § 1. As an example of such a case, he cites a situation where a debtor works a "change in legal structure amid insolvency or serious financial difficulties for the *sole* purpose of creating jurisdiction in a Bankruptcy Court." Norton, *supra*, Part 10, § 1. In addition, the case of *In re Joseph Mass*, 2 Bankr.Ct. Dec. 973 (D.Mass.1976), provides precedent for dismissing, before a plan is filed, a Chapter XII petition brought by a partnership established solely for the purpose of

4. If proven, this claim would most likely warrant dismissal of the action. *Shapiro v. Wilgus*, 287 U.S. 348, 53 S.Ct. 142, 77 L.Ed. 355 (1932); *In re Collins*, 75 F.2d 62 (8th Cir. 1934);

*In re Joseph Mass*, 2 Bankr.Ct. Dec. 973 (D.Mass.1976); Norton, Real Property Arrangements, Part 10 §§ 1–3.

filing the petition. Bankruptcy Judge Lawless stated:

> . . . [T]he powers of Chapter XII should be awakened only in cases where there are exemplary motives and scrupulous good faith.

> . . . Congress never contemplated that individuals can clothe themselves in corporate garments to take advantage of the law appertaining thereto, and have title shifted to themselves as individuals if that course seems to offer more advantages. This is true in spite of the absence of the necessity of preliminary good faith hearing in Chapter XII proceeding which is required in Chapter X. [sic].

2 Bankr.Ct. Dec. 974–75. If the policy against fraudulent invocation of the powers of a Chapter XII court is to be efficiently effectuated, the secured creditor should be allowed to dismiss the action *before* the debtor can take advantage of the delay caused by his filing the petition. So much of *Sumida* or *In re Samoset* that indicates otherwise is disapproved. Judge Lewittes's order is vacated and the case remanded for an immediate hearing on whether the debtor's petition was filed in good faith.

IT IS SO ORDERED.