In the Matter of GEORGETOWN
APARTMENTS, a General
Partnership, Debtor.

GEORGETOWN APARTMENTS, a
General Partnership, Appellant,

v.

METROPOLITAN LIFE INSURANCE
COMPANY and Bankers Trust
Company, Appellees.

Nos. 78–198, 78–258.

United States District Court,
M. D. Florida,
Orlando Division.

Memorandum Opinions April 24, 1979.

See also, D.C., 468 F.Supp. 855.

Jack H. Zinkow, Orlando, Fla., for appellant.

James H. Post, Jacksonville, Fla., Robert W. Smith, Orlando, Fla., Edward S. Cowen, New York City, for appellees.

## MEMORANDUM OPINION

GEORGE C. YOUNG, Chief Judge.

This cause is before the court on the appeal of the Debtor, Georgetown Apartments, from orders of the Bankruptcy Court entered on July 12, 1977 and January 30, 1978 in Case No. 76–648–Orl–Bk–M. The appellant has filed numerous assignments of error and in its lengthy brief argues 29 of these issues, dividing them into four general groups. The appellees, Metro-politan Life Insurance Company and Bankers Trust Company, have addressed each group of issues in their brief. Oral argument has been requested by counsel for both parties, but this court finds that all matters have been fully briefed so as to obviate the need for a hearing.

## STATEMENT OF THE FACTS

This controversy commenced on July 30, 1976 when the Debtor filed a petition for a real property arrangement under Chapter XII of the Bankruptcy Act [11 U.S.C. §§ 801–926]. The Debtor is a partnership comprised of Morris Ratner, his wife, son and daughter. Before the case began, the partnership owned and operated a 255 unit apartment complex in Orlando, Florida, known as Georgetown Apartments. Balance sheets of the four partners, admitted as evidence before the Bankruptcy Court, indicate total personal assets in excess of $2,000,000.00, free of all liabilities, as of May 1, 1977. The Debtor was permitted to retain possession of the property during the pendency of the Chapter XII proceedings.

Appellee Metropolitan Life Insurance Company holds a first mortgage on the Debtor's real property in the principal amount of $2,000,000.00. After the Debtor purchased the property in August of 1972, it gave a second mortgage of $700,000.00 to Appellee Bankers Trust Company in March 1973. Neither the Debtor nor any of its partners is liable on either of the mortgage debts. The secured creditors are therefore limited to recourse against the real property itself.

In March 1975 Appellee Metropolitan, upon the Debtor's request, granted a one year moratorium on all payments of principal due under the mortgage. Appellee Bankers granted a similar moratorium on all payments of both principal and interest. The Metropolitan moratorium was extended for six months after the conclusion of the initial year. The mortgage then went into default when the Debtor failed to make its July 1976 payment. Soon thereafter the Debtor filed for protection under Chapter XII.

The Debtor submitted several plans of arrangement over the course of the Chapter XII proceedings. All of the plans divided the creditors into four classes. Class I was the State of Florida with its claim for real estate taxes. This claim was to be paid in full. The parties agreed that the Class I creditor was not therefore affected by the plan.

Class II consisted solely of Appellee Metropolitan. Class III consisted solely of Appellee Bankers. Class IV was comprised of all unsecured creditors. Although the unsecured creditors consist of more than one entity, they are all either one of the partners of the debtor or else an entity controlled solely by the Debtor's partners. Because the Debtor's partners purchased any unsecured claims held by third party creditors, there are no unsecured creditors other than the Debtor's own partners.

The Debtor's proposed plan contemplated a five year further moratorium of payments on the mortgages. Under the original plan, Appellee Metropolitan would receive all cash flow from the property after operating expenses. This would go first to pay accrued interest and principal (which at the time of the confirmation hearing on May 18, 1977 was $1,719,498.11), with the remainder to meet current obligations under the mortgage. Should there be any cash flow left after these payments were made, then Appellee Bankers was to receive the remainder until its mortgage was brought current. At the end of the five years the original terms of the mortgages would again take effect, including the Appellees' rights of foreclosure.

The Debtor's first alternative plan was essentially the same as its original plan, except that the amount of Appellee Bankers mortgage would be permanently reduced at the time of confirmation. The alternative plan contemplated an appraisal of the property. The Bankruptcy Court would then reduce the value of Appellee Bankers mortgage to that amount by which the appraised value of the property at the time of confirmation exceeded the amount due on the Metropolitan first mortgage.

The second alternative plan proposed by the Debtor also provided for court appraisal of the value of the Debtor's property. The mortgage of Appellee Bankers would then be reduced so that the total of it plus Appellee Metropolitan's mortgage would equal the appraised value of the property. Sixty days after confirmation the Debtor would pay off both mortgages in cash or United States Bonds. The Debtor proposed to acquire the cash or bonds by means of a loan from the Department of Housing and Urban Development.

In an order entered on March 15, 1977, the Bankruptcy Court found that only the class of unsecured creditors had voted to accept the original plan. Both of the secured creditors, Appellees herein, had rejected the plan. In light of the Debtor's announced intention to invoke the "cramdown" provision of Section 461(11)(d) [11 U.S.C. § 861(11)(d)], the Bankruptcy Court ordered the Debtor to file an application for confirmation detailing how it proposed to utilize Section 461(11). The secured creditors were ordered to file responses. Hearing on all issues arising out of the application for confirmation was scheduled for May 18, 1977.

Counsel for the Debtor, by means of letter to the court dated April 8, 1977, attempted to get separate hearings on various issues, such as the appraised value of the property, the right to file amended plans based on the appraised value, whether the secured creditors were affected by the proposed plans pursuant to Section 407 [11 U.S.C. § 807], and whether confirmation was proper under Section 461(11)(d). On April 12, 1977 the attorney for Appellee Metropolitan wrote the Bankruptcy Court in opposition, objecting to the Debtor's request for multiple hearings. The Bankruptcy Court replied on April 15, 1977 that all matters should be taken up on May 18, 1977 as scheduled, but that counsel might discuss the issue at a hearing scheduled for April 21, 1977.

On April 25, 1977 the two alternative plans were submitted by the Debtor upon stipulation of the parties that the vote on

the original plan was deemed to apply to the two alternative plans. All three plans were therefore subject to consideration for confirmation on May 18, 1977. The Debtor's application for confirmation had been filed on March 29, 1977 and Appellee Bankers filed its response in objection on April 14, 1977. The response contained a request for dismissal of the proceedings. Appellee Metropolitan filed a similar response on April 21, 1977.

In addition to the responses to the application for confirmation, the secured creditors also filed objections to the Bankruptcy Court's order of March 15, 1977, attacking the right of the Class IV unsecured creditors to vote on the plan, because the Debtor's principals held all the unsecured claims. Appellee Metropolitan's objection, filed on March 21, 1977, was styled "Application for an Order Dismissing the Case. . . ." Appellee Metropolitan argued that if the unsecured creditors were not entitled to vote because they were controlled by the Debtor, then there remained no creditors who had voted to accept the plan and that dismissal was therefore in order. The Debtor filed a lengthy memorandum in opposition on April 18, 1977. After hearing the parties on April 21, 1977, the Bankruptcy Court entered a written order on April 29, 1977 denying the Appellees' objections and finding that the Class IV unsecured creditors were entitled to vote on the plan.

On the issue of dismissal the Bankruptcy Court's order provided that:

2. Metropolitan Life Insurance Company has heretofore raised an issue as to whether this case must be dismissed because the Plan of Arrangement filed herein has not been accepted by either of the secured creditors. The Debtor has asserted that such acceptance is not required if the secured creditors are either not 'affected' by the Plan of Arrangement as contemplated by Section 407 of the Bankruptcy Act or are adequately protected as contemplated by Section 461(11)(d) of the Bankruptcy Act. Any such issue so raised by Metropolitan Life Insurance Company in its aforesaid application served on March 21, 1977 shall not be determined at this time, but may be the subject of future consideration by this court. The Memorandum dated April 15, 1977 heretofore submitted by the Debtor shall be deemed the Debtor's opening memorandum with respect to such issue. Any Memorandum by the secured creditors in response thereto shall be filed on or before May 9, 1977. The Debtor may file a reply memorandum on or before May 19, 1977.

This portion of the April 29, 1977 order resulted in large part from the suggestion of attorney Edward S. Cowan, Debtor's counsel, at the April 21, 1977 hearing. Attorney Cowan suggested that the question of dismissal was a matter of law and could be briefed without hearing. The transcript of the colloquy between counsel and the Bankruptcy Court regarding dismissal during the April 21, 1977 hearing indicates that any ruling on dismissal would be contingent on the outcome of the May 18, 1977 hearing concerning the Debtor's application for cram-down of its plan.

At the beginning of the May 18, 1977 hearing the Bankruptcy Court outlined the matters to be heard. *Among them was the application of Appellee Metropolitan to dismiss the case.* The Bankruptcy Court stated that depending on the nature of the evidence presented on that day, it might or might not be in a position to issue a ruling on dismissal without further hearing. Counsel for the Debtor was present and expressed no objection to this procedure. The Bankruptcy Court then proceeded to take evidence and hear argument in the case for the remainder of the day. All matters heard were taken under advisement.

On June 10, 1977 Bankruptcy Judge Proctor telephoned counsel for Appellee Metropolitan. The Bankruptcy Judge indicated that he had decided to rule in their client's favor and asked to see counsel to discuss the preparation of an appropriate order. Counsel for Appellee Metropolitan then went to the Bankruptcy Judge's chambers that day and the contents of the proposed

order were outlined by the Bankruptcy Judge.

After spending over 100 hours in preparing the order, counsel for Appellee Metropolitan presented the draft order to the Bankruptcy Judge in his chambers on July 11, 1977. After reading the order that evening, the Bankruptcy Judge again met with Appellee Metropolitan's counsel on the morning of the 12th and indicated several changes he wished to be made in the order. Counsel had the order retyped to reflect these changes and the Bankruptcy Judge signed and entered the order on the same day, July 12, 1977.

Counsel for the other parties were never presented with a copy of the proposed order before the time that it was entered. The Bankruptcy Judge called counsel for Appellee Bankers on June 10, 1977 and informed him that a ruling was forthcoming and that it would be drafted by Metropolitan's counsel. The Debtor's local counsel learned of this fact as well, although it is disputed as to whether that knowledge was obtained from the Bankruptcy Court or from conversations with counsel for Appellee Bankers.

In its order entered on July 12, 1977, the Bankruptcy Court found that as of the date of hearing, May 18, 1977, the Debtor's property was worth $2,050,000.00. At the same time the outstanding principal and interest under the Metropolitan mortgage was $1,719,498.11 plus $436.07 in daily interest thereafter. The Bankers Trust mortgage had outstanding principal and interest in the amount of $853,670.78. The two secured creditors were found to be materially affected pursuant to Section 407 [11 U.S.C. § 807] by each of the Debtor's three proposed plans of arrangement. Alternatively, the Bankruptcy Court held that even if the secured creditors were not affected, the plan could not be confirmed on the basis of the vote of the unsecured creditors alone.

Having found that the secured creditors were affected, the Bankruptcy Court then discussed the application of the cram-down provisions of Section 461(11) [11 U.S.C. § 861(11)]. None of the plans proposed by the Debtor was found by the court to provide the secured creditors with adequate protection for the realization by them of the value of their debts. Cram-down therefore could not be accomplished.

In ruling on Appellee Metropolitan's application for dismissal, the Bankruptcy Court held that even if one of the plans provided adequate protection, that it nevertheless could not be confirmed over the unanimous objection of the secured creditors. The Bankruptcy Court ruled that at least one of the secured creditors must vote to accept a real property plan of arrangement and that mere acceptance by a class composed of unsecured creditors would be insufficient for confirmation.

The Bankruptcy Court concluded its order by holding that a dismissal hearing pursuant to Bankruptcy Rule 12–41 was unnecessary because none of the Debtor's plans could be confirmed, that further amended plans should not be permitted, and that an adjudication of bankruptcy would not be in the interest of the creditors. The automatic stay provided by Bankruptcy Rule 12–43 was lifted, but jurisdiction over the case was retained in order to determine allowable fees and costs. In order to secure a fund to pay such fees and costs, the Debtor was enjoined from disposing of any cash on hand derived from its operation of the real property.

The next day, July 13, 1977, Appellee Metropolitan filed a foreclosure proceeding in state court. Application was made for appointment of a receiver. A hearing date was set in state court and the Debtor's counsel was given notice of it. Counsel for the Debtor appeared at the hearing and sought a continuance. The state court granted the continuance, resetting its hearing on appointment of a receiver for August 3, 1977.

In the meantime, Debtor filed a motion in the Bankruptcy Court on July 22, 1977 to amend the July 12, 1977 order. The motion sought amendment of the provision enjoining the Debtor's disposition of cash on hand and requested reconsideration of the denial of confirmation of the proposed plans. *No relief was sought, however, with respect to*

*the reinstatement of the automatic stay.* The Bankruptcy Court noticed a hearing on the motion, as well as on the creditors' motions for allowance of attorneys' fees. and costs, for August 11, 1977.

On August 3, 1977, more than a week after the Debtor filed its motion to amend, Appellee Metropolitan's application for appointment of a receiver came on for the hearing, previously continued, in the state court. The attorneys for the Debtor appeared there and argued the impropriety of appointing a receiver, but the state court rejected the Debtor's argument. A receiver was therefore appointed to take possession of the Debtor's property.

Not until after the state court receiver had been appointed, therefore, was the Debtor's motion to amend the July 12, 1977 Bankruptcy order argued before the Bankruptcy Court on August 11, 1977. At the start of that hearing, the Debtor filed a second motion in the Bankruptcy Court to vacate the July 12, 1977 order. In this motion, filed at the hearing, the Debtor alleged that the preparation of the Court's July 12, 1977 order by Appellee Metropolitan's counsel was improper and involved *ex parte* communications that denied the Debtor constitutional due process. These circumstances were alleged to necessitate a full rehearing of all matters addressed in the July 12, 1977 order. The motion to vacate also sought an injunction against the state receiver and an order returning possession and control of the real property to the Debtor. Finally, the motion to vacate called upon the Bankruptcy Judge to disqualify himself and assign the case to a different judge.

The Bankruptcy Court heard the motion to vacate, filed during the hearing, without notice. Because the motion sought recusal, that matter was considered first. In a written order entered August 16, 1977, Bankruptcy Judge Proctor granted the Debtor's motion insofar as it sought his disqualification. After recusing himself, Judge Proctor refused to rule on any further matters, transferring the case and all pending motions to Bankruptcy Judge Al-

exander Paskay. In his written order of recusal, Judge Proctor made findings denying any impropriety, but nevertheless held that another judge should hear the case in light of the seriousness of the Debtor's allegations.

Bankruptcy Judge Paskay held a hearing on September 20, 1977 after which he entered an order on September 28, 1977. In that order Judge Paskay granted the motion of Debtor's local counsel to withdraw from further representation in the case. Debtor's application for a temporary restraining order was denied, but the state court was enjoined from scheduling any judicial sale of the real property until after October 21, 1977. On October 11, 1977 Judge Paskay held another hearing at which he received evidence and heard argument on the Debtor's two pending motions attacking the July 12, 1977 order. A written order was then entered by Judge Paskay on January 30, 1978.

In the January 30, 1978 order Bankruptcy Judge Paskay found that all charges of impropriety against Bankruptcy Judge Proctor were totally without factual basis. The July 12, 1977 order was found to be solely the decision of the Bankruptcy Court, rather than of the attorneys who prepared it. Judge Paskay found no errors of fact or law in the July 12, 1977 order that would justify correction on rehearing, as opposed to appeal. Finally, the July 12, 1977 removal of the automatic stay without notice and a hearing was found to have been error, so that the January 30, 1978 order continued Judge Paskay's injunction against further proceedings in the state foreclosure suit, pending appeal of the bankruptcy order. The Debtor was granted ten days to file an appeal. That appeal is now at bar before this court.

## ISSUES

As noted above, the Appellant Debtor has divided its numerous assignments of error into four general categories. First, the Debtor argues that in the Bankruptcy Court's July 12, 1977 order several matters were erroneously ruled upon because they

had not been properly noticed and heard prior to issuance of the July 12, 1977 order. Second, it is argued that the Bankruptcy Court erred when it refused to utilize the cram-down provisions of Section 461(11) [11 U.S.C. § 861(11)] and approve one of the Debtor's proposed plans of arrangement. Third, the manner of preparation of the July 12, 1977 order is alleged to have resulted in a denial of the appellant Debtor's right to a fair trial and to due process of law. Fourth, and finally, the Debtor argues that the Bankruptcy Court violated specific provisions of the Bankruptcy rules in disposing of many of the matters ruled upon in the July 12, 1977 order.

The court has carefully reviewed both the entire record on appeal and the briefs and supplements thereto of the parties. Having done so, the court concludes that the issues on appeal may be further simplified by placing them in two general groups. The first group concerns procedural matters and includes the Debtor's categories 1, 3 and 4. The second group concerns substantive matters and correlates to the Debtor's second category. Although many issues have been argued back and forth and this court has considered each, not all of the issues are specifically addressed in this opinion. Those that are not have been decided adversely to the party that raised them. The procedural issues will be considered first and afterwards the court will then discuss the substantive issues.

## PROCEDURAL ISSUES

The Debtor predictably has not been pleased with the substantive outcome of its Chapter XII proceedings. This displeasure accounts to some degree for the vigor and imagination displayed in the Debtor's arguments which seek to picture the Debtor as a victim of erroneous procedures on the part of the Bankruptcy Court. A thorough consideration of the record in this case has convinced this court, however, that to the extent error occurred, it was harmless. The Debtor was not denied its constitutional right to due process of law in any of the proceedings before the Bankruptcy Court.

Relitigation of the substantive matters already ruled upon by the Bankruptcy Court would serve no real purpose other than to cause further expense and delay in these proceedings.

The same procedural objections argued herein were presented to Bankruptcy Judge Paskay. With respect to Judge Proctor's preparation of the July 12, 1977 order, Judge Paskay heard both live testimony and arguments. He found in his January 30, 1978 order that no evidence existed to prove misconduct on the part of Judge Proctor during the preparation of the July 12, 1977 order. This court in reviewing the evidence presented at the hearing held before Judge Paskay, as well as the entire record in this case, including the order by which Judge Proctor recused himself, concludes that Judge Paskay's findings are supported by the evidence.

Nothing in the record suggests that either the scope or the content of the July 12, 1977 order would have been different if Bankruptcy Judge Proctor had prepared the order personally. The practice of requesting an attorney for a prevailing party to prepare a proposed form of order is not unusual or improper. However, such procedure normally contemplates that the court's ruling will be announced orally to all the parties before the request is made. This leaves all parties on an equal footing to take whatever further steps are necessary once the order is entered.

In the case at bar the Bankruptcy Court failed to adequately apprise all parties of the content of the July 12, 1977 order before the order was entered. The record discloses that the Debtor's local counsel knew an order was being prepared well before the order was entered, but did not know its contents. Despite this fact, the Debtor neither inquired of the Bankruptcy Court regarding the proposed order nor attempted to submit a proposed order of its own.

Appellee Metropolitan's attorneys were knowledgeable about the details of the order. Because the order provided for dismissal of the case and a removal of the

automatic stay, this knowledge proved valuable to them. Appellee Metropolitan's counsel were able to file their state court foreclosure the day after the Bankruptcy Court's July 12, 1977 order was signed and entered.

As Bankruptcy Judge Paskay held in his January 30, 1978 order, the automatic stay of Bankruptcy Rule 12–43 in fact was not terminated on July 12, 1977. It remained in effect for 10 days thereafter pursuant to Rule 762, Bankruptcy Rules and Section 39c of the Bankruptcy Act, [11 U.S.C. § 67c]. At the expiration of the 10 days, a party must apply for a stay pursuant to Bankruptcy Rule 805 and Section 39c of the Act [11 U.S.C. § 67c], otherwise the order appealed from becomes effective. Application must be made for a stay regardless of whether a notice of appeal has been filed or the time to file a notice of appeal has been extended by a motion pursuant to Bankruptcy Rule 802(b).

The state court receiver was not appointed until more than 10 days after the July 12, 1977 order. The Debtor's motion to amend, filed on July 22, 1977 did not seek a supersedeas stay. On August 3, 1977 when the state court appointed its receiver, no bankruptcy stay was in effect. Not until August 11, 1977 did the Debtor file its motion to vacate the July 12, 1977 order. That motion to vacate sought an injunction forbidding continuation of the state proceedings.

The record indicates therefore that although the state foreclosure was commenced while the automatic bankruptcy stay was still in effect, the receiver was not appointed until well after the July 12, 1977 order had become final, thereby lifting the automatic stay. As a result of knowing the contents of the July 12, 1977 order, Appellee Metropolitan got a jump on the Debtor by promptly filing its foreclosure complaint in the state court. But the institution of the receivership, which as a practical matter is the real source of the Debtor's dismay (because the receiver took possession and control of the real property), was not accomplished immediately.

The prompt filing of the state foreclosure action did not result in the instantaneous commencement of a receivership. In fact, at the Debtor's request the state court granted a continuance of the hearing on appointment of a receiver. During that continuance the Debtor had ample time in which to apply for a stay from the Bankruptcy Court. The Debtor did not make a timely application however.

Turning then to the Debtor's arguments that at the May 18, 1977 hearing the Bankruptcy Court did not sufficiently notice and consider dismissal of the case and removal of the automatic stay, the court finds these arguments to be without merit. Pursuant to Bankruptcy Rule 12–43(b) the automatic stay in a Chapter XII proceeding terminates upon the entry of an order dismissing the case. If dismissal is proper, then the automatic stay can be expected to terminate at the time of dismissal. The question therefore becomes whether dismissal was properly considered at the May 18, 1977 hearing.

A close review of the record in this case reveals that although the Bankruptcy Court did not give written notice in the most explicit terms that dismissal was to be considered; nevertheless, all the parties were well aware that the Bankruptcy Court might dismiss the case after the May 18, 1977 hearing. This fact is evident from the colloquy between the Bankruptcy Court and Debtor's counsel at the beginning of the May 18, 1977 hearing, as noted in the facts previously outlined above.

The record is clear that the Debtor was attempting to prolong the proceedings to the extent possible by holding separate hearings on every issue. This fact is evidenced by the letter of Debtor's counsel, dated April 8, 1977, to the Bankruptcy Court. It is equally clear, however, that the Bankruptcy Court was resisting these attempts. The May 18, 1977 hearing was scheduled by the Bankruptcy Court to take up the merits of the Debtor's proposed plans. The transcript of that hearing makes it clear the Bankruptcy Judge made it plain to counsel (with no objection from

either side) that dismissal was an issue being considered and would probably be granted in the event the proposed plans were without merit.

■ Bankruptcy Rule 12–41(b)(3) provides for dismissal if no plan is confirmed. The order of dismissal may be entered only "after hearing on such notice as [the Court] may direct." The May 18, 1977 hearing satisfied this requirement of Bankruptcy Rule 12–41(b). Although the notice given by the Bankruptcy Court regarding dismissal was not ideal under all circumstances, in this case the notice and hearing were adequate to satisfy both the requirements of Bankruptcy Rule 12–41 and Section 481(2) [11 U.S.C. § 881(2)], and of constitutional due process of law.

The Court notes that in the written order of Bankruptcy Judge Paskay, entered on January 30, 1978, mention is made numerous times that the hearing on May 18, 1977 did not consider dismissal. For example, on page three of his order, Judge Paskay states that "It is without dispute that the confirmation hearing which culminated in the entry of the order of July 12 considered neither a dismissal not [sic] the lifting of the automatic stay." Review of the transcript of the May 18, 1977 hearing, however, in no way supports such a finding.

The transcript of the May 18, 1977 hearing was not prepared until May 2, 1978, as evidenced by the court reporter's certificate on page 165 thereof and the Bankruptcy Clerk's filing date stamp of May 2, 1978 on the cover page. It is clear therefore that the comments made in the January 30, 1978 order of Bankruptcy Judge Paskay were made without the benefit of actually reading the transcript of the May 18, 1977 hearing. Judge Paskay erroneously relied on the characterizations of counsel as to the content of the May 18, 1977 proceedings.

This is evident when the transcript is actually consulted. On pages 4 and 5 of the May 18, 1977 hearing transcript, Bankruptcy Judge Proctor discusses the pending motion to dismiss. On page 9, Judge Proctor states that an order disposing of the case might be made fairly quickly. On page 11 Judge Proctor again states that "from the testimony offered today, the Court may or may not be able to be in a position to make rulings on [the motion to dismiss]. If I do, I plan to rule on that. If I feel like I need further argument or another hearing, I will do so." At no point did counsel for the Debtor object.

Then on pages 134 and 144 of the transcript, evidence was admitted by Judge Proctor solely on the question of dismissal. The evidence was otherwise irrelevant to the question of confirmation of the proposed plans. The Debtor's attorney again did not question the propriety of consideration of the issue of dismissal. Therefore, the July 12, 1977 order of dismissal was not an unanticipated and unargued result.

Moreover, the statement on page 7 of the January 30, 1978 order is not correct that "lifting of the automatic stay in the Order of Dismissal without notice and without an opportunity to be heard was in error . . ." Under the Bankruptcy Rules cited above, the automatic stay terminates automatically once an order of dismissal becomes final and there is no need for a separate hearing on the question of lifting the stay. No supersedeas was sought by the Debtor in this case so that the automatic stay terminated ten (10) days after the order of dismissal was entered. (See hereinabove.)

These errors in the body of the January 30, 1978 order have not been challenged on cross-appeal by the Appellees. The errors are so contradictory to the record in this case while it was before the Bankruptcy Judge Proctor, however, that the Court has taken the liberty of discussing them on its own. This is in recognition of the fact that although this court is affirming the conclusions reached on pages 8 and 9 of the January 30, 1978 order, the body of that order contains the misstatements of both law and fact noted above. The errors are understandable in view of the unavailability of the transcript of the May 18, 1977 hearing

at the time of Judge Paskay's order of January 30, 1978.[1]

## SUBSTANTIVE ISSUES

Having considered the myriad of procedural issues presented by this appeal, the court must now review the substance of Bankruptcy Judge Proctor's order wherein he denied confirmation of the Debtor's three proposed plans of arrangement and dismissed the case. This review concerns primarily the issue of whether use of the so-called "cram-down" provisions of Section 461(11) [11 U.S.C. § 861(11)] of Chapter XII of the Bankruptcy Act was appropriate in this case. In considering this issue the Court's decision is necessarily limited by the facts of the case at bar.

■ Upon a review of the decision rendered by the Bankruptcy Court on July 12, 1977 this court finds itself in agreement. Clearly, under any of the proposed plans submitted by the Debtor, Appellee Metropolitan was an "affected creditor" within the meaning of Section 407 [11 U.S.C. § 807] because the value of the real property was determined by the Bankruptcy Court to exceed the value of Metropolitan's mortgage. Appellee Bankers was also an affected creditor because some value remained in the property after satisfaction of Metropolitan's mortgage. That value would be subject to the second mortgage of Appellee Bankers.

The Debtor attempted to argue that the two secured creditors were not in fact affected because at a foreclosure sale the full appraised value of the real property was not likely to be received. This argument ignores, however, the legal right of the secured creditors to buy the property themselves at the foreclosure sale and hold it in an attempt to get a more lucrative price at a later private sale. Moreover, whether or not a substantial third party bid would be made at any foreclosure sale of the property is purely speculative.

■ The objecting secured creditors having been found to be affected under all the Debtor's proposed plans, the only way confirmation of the plans might legally have been accomplished under Section 468 [11 U.S.C. § 868] was by the provision of payment or protection pursuant to Section 461(11) [11 U.S.C. § 861(11)]. Because the two secured creditors unanimously rejected the Debtor's proposed plans, the secured creditors argued that regardless of the plans' provisions, confirmation could not be permitted under Section 461(11).

■ A controversy exists among the Bankruptcy Courts over this issue of whether secured creditors' unanimous rejection of a Debtor's plans may legally prevent confirmation. The policy considerations are many and complex. The Court has reviewed the cases cited by the parties to this appeal. Without undertaking an extensive discussion of the issues, this court tends to agree with the ruling of the Bankruptcy Court below as well as the recent decisions of the Tenth Circuit in *Gardens of Cortez v. John Hancock Mutual Life Insurance Company*, 585 F.2d 975 (10th Cir. 1978) and District Judge Edenfield in *In Re: Stillbar Construction Company*, 19 C.B.C. 15 (N.D. Ga.1978), in holding that unanimous objection on the part of affected secured creditors prevents a Chapter XII arrangement from being confirmed. When the unsecured creditors are in fact the Debtor's principals as assignees of the unsecured claims, and the appraised value of the property leaves no equity for the Debtor after provision for secured claims, as in the case at bar, it would be peculiar indeed to permit confirmation despite unanimous objection by the mortgagees. It is inconceivable that a court of justice should be expected to give its imprimatur to such procedure.

■ But the court need not resolve this issue on this appeal, however, because the Bankruptcy Court's dismissal of the case is

1. The Court also notes that the October 11, 1977 hearing before Judge Paskay was held almost seven months before the transcript of the May 18, 1977 hearing before Judge Proctor was filed. Consequently, Judge Paskay was in October, 1977, without benefit of knowledge as to what actually transpired at the May 18, 1977 hearing before Judge Proctor.

supported by more than this theory alone. The facts of this case as disclosed by the record mandate dismissal separate and apart from the question of whether unanimous secured creditor opposition can prevent confirmation of a plan. None of the Debtor's proposed plans provided adequate protection for the realization by the secured creditors of the value of their debt against the property.

None of the Debtor's three proposed plans of arrangement would have assured the secured creditors that payment of the value of their debts, in the amounts found by the Bankruptcy Court, would actually be made. The original plan and the first alternative plan would have merely provided a five year moratorium on further mortgage payments. Prior to the institution of the Chapter XII proceedings the two mortgagees had already given the Debtor a year and one-half grace period during which time payments on their mortgages were suspended.

As the Ninth Circuit pointed out in *Taylor v. Wood*, 458 F.2d 15 (9th Cir. 1972), Chapter XII may not be used by a Debtor as a restraining order to stave off foreclosure where no true plan of arrangement is possible. In the case at bar the Debtor provided no assurance that there would actually be any cash flow from its operation of the real property that would be turned over to the secured creditors during the five year period. This is not a case under Section 461(11)(c) [11 U.S.C. § 861(11)(c)] where the secured creditors would be paid in cash the appraised value of their debts.

Under the Debtor's second alternative proposed plan the secured creditors would have received cash or bonds within 60 days after confirmation of the plan. But this plan was contingent on the Debtor's acquisition of a government insured loan. The application would take at least six months to process. After hearing evidence, the Bankruptcy Court in its July 12, 1977 order found that the Debtor's receipt of the HUD loan "was conditioned upon contingencies which rendered the proposed payment to be speculative at best." A perusal of the transcript of the May 18, 1977 hearing has convinced this court that the Bankruptcy Court's factual findings on this matter were not erroneous. With the Debtor's record in this case it is difficult to conceive that a tax-guaranteed loan would be forthcoming.

Having properly found that confirmation of the plans was impossible, the Bankruptcy Court dismissed the case upon a finding that an adjudication of bankruptcy would not be in the best interest of the creditors. In the context of these proceedings, the court agrees that dismissal was proper. No confirmable plans were likely to be proposed by the Debtor and further continuation of the case would have resulted only in more delays so as to prejudice the secured creditors. Debtor strongly objects to the Bankruptcy Court's decision not to proceed with a straight bankruptcy. This is because the Debtor's principals are the unsecured creditors and they hope for payment of some of their claims in a straight liquidating bankruptcy. In light of the fact that the unsecured claims are small in comparison with the debts owed to the two mortgagees, Appellees Metropolitan and Bankers, the Bankruptcy Court did not err in finding that an adjudication of bankruptcy would not be in the best interest of all the creditors. The Debtor's sole asset was the real property and its value was not sufficient to leave anything for the unsecured creditors after payment of the secured creditors mortgages. Moreover, the unsecured creditors could seek to recover their debts directly from the solvent partners of the debtor. In fact, of course, the true original unsecured creditors had already done so when they sold and assigned their claims to the Debtor's principals.

■ Once the case was dismissed, the Bankruptcy Court properly retained control of the funds on hand held by the Debtor in possession. The court intended to pay the administrative cost of the proceedings out of this fund. Because the debtor was permitted to remain in possession of its real property during the pendency of the Chapter XII proceedings, the Bankruptcy Court possessed authority under Section 444 [11

U.S.C. § 844] and Bankruptcy Rule 12–22 to direct that the proceeds of the operation of the real property be held by the Debtor to provide for payment of proper administrative costs. Otherwise, the Bankruptcy Court could not insure that it would retain the ability to provide for payment of such costs in compliance with Section 495 [11 U.S.C. § 895] and Bankruptcy Rule 12–28(e).

## CONCLUSION

Having considered all the various assignments of error alleged by the Appellant Debtor, the court concludes each to be without merit. The two orders appealed from, entered by the Bankruptcy Court on July 12, 1977 and January 30, 1978, are therefore affirmed. Separate judgment shall be entered in accordance herewith.