**In re William E. EVERETT, Debtor.**

**Bankruptcy No. BA 82–18.**

United States Bankruptcy Court,
E.D. Arkansas, N.D.

April 25, 1983.

Robert J. Brown, Little Rock, Ark., for debtor.

James E. Smith, Little Rock, Ark., for creditor Parts, Inc.

## MEMORANDUM OPINION AND DECISION DENYING MOTION FOR REHEARING AND NEW TRIAL AND MOTION FOR RELIEF FROM ORDER DISMISSING CHAPTER 11 PROCEEDINGS

ROBERT F. FUSSELL, Bankruptcy Judge.

Pending before this Court for decision is a Motion for Rehearing and New Trial and Motion for Relief from Order Dismissing Chapter 11 proceedings filed by the debtor. The files and pleadings in this Chapter 11 case reveal that a voluntary petition was filed April 27, 1982. These documents also reveal that Parts, Inc. was initially listed as the largest of the 10 unsecured creditors of this debtor, William E. Everett. Upon the filing of the debtor's statement of affairs and schedules on June 2, 1982, Parts, Inc., was listed on Schedule A–2 as a secured creditor in the amount of $47,085.69, and property listed on Schedule B–1, having a value of $45,000.00, was listed as security. The records reveal the following history of the relationship between the debtor and this creditor, and it is relevant to the Court's reconsideration of the dismissal of the debtor's Chapter 11 case.

Parts, Inc., and the debtor and his wife, Evalee Everett, entered into a credit agreement July 20, 1979, whereby the creditor agreed to sell to the debtor and his wife merchandise on an open account with a credit limit of $69,000.00. The debtor was in the auto parts business. The creditor, to secure the extension of credit, had the debtor execute a security agreement and financing statement providing as security a second mortgage on real estate owned by the debtor and his wife.

Subsequently, the creditor filed suit in Chancery Court of Stone County, Arkansas, *Parts, Inc. v. William B. Everett and Evalee Everett, His Wife,* No. E–80–5, seeking judgment on the open account, foreclosure on the second mortgage and assignment of notes and mortgages made to the creditor by other parties against the debtor. On November 12, 1980, the Chancellor entered a judgment in favor of the creditor and against the debtor in the amount of $47,-086.36 which would allow foreclosure of the real property if the judgment was not paid within ten days from the entry of the Decree. The debtor appealed the Chancellor's decision to the Arkansas Court of Appeals, *William E. Everett and Elvalee Everett, et. ux. v. Parts, Inc.,* CA 81–73. On March 10, 1982, the Arkansas Court of Appeals affirmed the Chancellor's decision. Foreclosure proceedings in Stone County resulted in a public sale of the real estate for $40,-000.00.

On April 27, 1982, the debtor filed a voluntary Chapter 11 petition and the foreclosure sale was set aside. Parts, Inc., filed an adversary proceeding, No. AP 82–344, in the Chapter 11 proceedings, seeking relief from the automatic stay to proceed with foreclosure. On June 22, 1982 the Bankruptcy Court denied that request without prejudice to its reassertion at a later time as an objection to confirmation of the debtor's plan of arrangement. The Court further ordered the debtor to file his plan of reorganization and disclosure statement on or before July 16, 1982. The debtor sought an extension of time to file the plan and disclosure statement. Both were eventually filed July 27, 1982.

On August 11, 1982, the Bankruptcy Court set a hearing for September 8, 1982 on the following: (1) the sufficiency of the disclosure statement under § 1125 of the Bankruptcy Code, and (2) the issue of abstention or dismissal, or both, for failure of the debtor to file monthly operating statements as required by Rule 11–30 of the Rules of Bankruptcy Procedure. Notice of this hearing, as indicated by the certificate of mailing, went to the debtor, all creditors and all taxing agencies. A hearing was held and the debtor was ordered to file an amended disclosure statement within ten days.

In a modified disclosure statement filed September 17, 1982, the debtor, who is no longer in the auto parts business but unemployed and disabled, revealed that his plan consisted of his intention to borrow $20,800.00 from his brother to "nurture a cow herd for the purpose of producing sufficient income to service the reorganization debt to Parts, Inc., to preserve his homestead ..." The debtor indicated that the terms of the borrowing were interest only annually with the balance due ten years from date; the balance being fully secured by the cow herd. The debtor anticipated that sale of the livestock would provide enough money for the plan. The modified disclosure statement acknowledged that Parts, Inc. would be "approximately $7,500.00 unsecured and $40,000.00 secured by the debtor's homestead." The debtor proposed a one-time pro-rata payment of $1,200.00 to unsecured creditors, and the unsecured debt totaling $26,000.00 ($7,500.00 to Parts, Inc., $18,500.00 to all other unsecured creditors). The debtor proposed to pay his one secured creditor, Parts, Inc., in 15 annual payments of $6,000.00, the first payment to be made the year after the effective date of the plan. The debtor also projected that forty sales of calves and bulls from the herd would be made in the first year of implementation of the plan at an average gross recovery of $500.00 per animal or $20,000.00 income for the first year.

The debtor estimated in this modified disclosure statement that his first year expenses would be the following: $600.00 per month to be expended on the cow herd, or $7,200.00 annually, leaving $12,800.00 remaining for debt service and personal expenses; $6,000.00 annually for the debt service to Parts, Inc.; $2,080.00 in interest annually to his brother on the $20,800.00 note; $1,200.00 as a one-time pro-rata payment to unsecured creditors; and $3,520.00 in reserve for personal expenses. (The Court notes that the debtor, in the only operating report filed since the inception of these proceedings eleven (11) months ago, lists his monthly family expenses at $300.00 per month. This report was filed September 7, 1982 for the time period May 1, 1982 through August 31, 1982. No other reports have been filed.)

The Court, after a hearing, preliminarily approved the debtor's disclosure statement on October 13, 1982 and gave him leave to solicit acceptances. On October 19, 1982 the debtor filed his certificate of mailing of the plan of arrangement to all creditors. The filed plan provided, pertinent to the motion now before the Court, that unsecured claims would be divided into two classes; those that exceed $1,000.00 and those under $1,000.00.

On October 21, 1982, Parts, Inc., filed an objection to confirmation of this plan alleging that the plan was not feasible, not proposed in good faith and not equitable. Parts, Inc., also asked the Court to dismiss the Chapter 11 petition with prejudice. This objection to confirmation was set for hearing at the same time as the hearing on the sufficiency of the modified disclosure statement and confirmation of the plan. The November 4, 1982 hearing was continued to December 10, 1982 according to the proceeding memo of the Bankruptcy Judge, the Honorable Dennis J. Stewart, Western District of Missouri, sitting in the Eastern District of Arkansas by designation.

On December 10, 1982, at the continued hearing on the sufficiency of the modified disclosure statement, confirmation of the Chapter 11 plan and objection to confirmation by Parts, Inc., the attorney for the debtor and the attorney for the creditor

advised the presiding Judge, the Honorable Dennis J. Stewart, that the plan of arrangement had failed. The debtor's attorney then made an oral motion to dismiss the Chapter 11 case without prejudice, which motion was granted by the Court. On December 13, 1982 a written Order dismissing the Chapter 11 proceedings was entered and the case was dismissed.

On December 20, 1982, the debtor filed the now pending Motion for relief from the Order of dismissal requesting a rehearing claiming "plain error of fact and law." The debtor claims plan error of fact occurred because he moved for dismissal of his Chapter 11 case based on mistaken information that his plan of reorganization was not confirmable. He further claims error of law asserting that the case was improperly dismissed without notice to all interested parties as required by § 1112 of the Bankruptcy Code and Rule 2002 of the Interim Bankruptcy Rules.

A hearing was held before this Court in Batesville, Arkansas on February 1, 1983 on the motion for rehearing. The debtor appeared by counsel, Lisa Kelly, Esq., from the law firm of R.J. Brown, P.A., and James E. Smith, Jr., Esq., appeared for Parts, Inc. The Court, at the hearing, asked the parties to submit briefs in support of their positions on whether or not this Court should grant the debtor's motion for rehearing. Both parties have submitted letter briefs to the Court for its consideration.

The first ground raised by the debtor in support of his petition for rehearing is that "plain error of fact" occurred because his attorney moved for dismissal of his Chapter 11 case based on the mistaken information that his plan was not confirmable. He asserts in a letter brief submitted by his attorney that the following events at the hearing of December 10, 1982 occurred which resulted in "error of fact" which led to the improper dismissal of his case:

Attorneys for both the creditor and the debtor misinformed the Court as to the very terms of Debtor's plan. Only minutes before the December 10, 1982 confirmation hearing was to take place, Parts, Inc., represented through James E. Smith, Jr., filed a claim and ballot which rejected the plan of arrangement on behalf of the secured creditor he represented. Parts, Inc., had broken its claim into a secured and unsecured portion for purpose of voting in order to defeat the plan. Both attorneys advised the Court that the plan had failed. However, the plan was not defeated. Debtor's plan provided for two classes of unsecured creditors: (1) those with claims exceeding $1,000.00 and (2) those with claims below $1,000.00. Parts, Inc.'s claim belonged to the former category. Voting creditors in the second category unanimously accepted the plan. The hearing on confirmation should have ensued with regard to the cram-down provision of 11 U.S.C. § 1129(b), because the "window" requirements of an acceptance of one class of creditors required by 11 U.S.C. § 1129(a)(8) and (10) had not been met. *The failure of the attorneys to notify the Court of the plain facts as stated in the record was plain error, a factual error of omission resulting in manifest error of law.*[1] (emphasis added).

---

1. Section 1129 of the Bankruptcy Code provides in pertinent part:

   (a) The court shall confirm a plan only if all of the following requirements are met:
   (1) The plan complies with the applicable provisions of this chapter.
   (2) The proponent of the plan complies with the applicable provisions of this chapter.
   (3) The plan has been proposed in good faith and not by any means forbidden by law.
   (4)(A) Any payment made or promised by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in, or in connection with, the case, or in connection with the plan and incident to the case, has been disclosed to the Court; and,
   (B)(i) any such payment made before confirmation of the plan is reasonable; or
   (ii) if such payment is to be fixed after confirmation of the plan, such payment is subject to the approval of the court as reasonable.
   (5)(A)(i) The proponent of the plan has disclosed the identity and affiliations of any

individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and,

(ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy;

(B) The proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

(6) Any regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

(7) With respect to each class—

(A) each holder of a claim or interest of such class—

(i) has accepted the plan; or

(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of this title on such date; or

(B) if section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such creditor's interest in the estate's interest in the property that secures such claims.

(8) With respect to each class—

(A) such class has accepted the plan; or

(B) such class is not impaired under the plan.

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—

(A) with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(B) with respect to a class of claims of a kind specified in section 507(a)(3), 507(a)(4), or 507(a)(5) of this title, each holder of a claim of such class will receive—

(i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and

(C) with respect to a claim of a kind specified in section 507(a)(6) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

(10) At least one class of claims has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class.

(11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor of any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

(b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

(A) With respect to a class of secured claims, the plan provides—

(i)(I) that the holders of such claims retain the lien securing such claims, whether the property subject to such lien is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the lien securing such claims, free and clear of such lien, with such lien to attach to the proceeds of such sale, and the treatment of such lien on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

(B) With respect to a class of unsecured claims—

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain on account of such junior claim or interest any property.

The court, upon a review of the files and pleadings as well as the transcript of the proceedings of December 10, 1982, and the letter briefs supplied by the parties, finds that the debtor's Motion for relief from the Order dismissing these Chapter 11 proceedings should be denied for the following reasons.

Rule 59 of the Federal Rules of Civil Procedure has generally been deemed applicable to a "petition for rehearing" of an Order entered in bankruptcy cases. *Claybrook Drilling Co. v. Divanco, Inc.,* 336 F.2d 697, 700 (10th Cir.1964). See also Bankruptcy Rule 923 of the rules of Bankruptcy Procedure, which provides that a Rule 59 Motion for a new trial applied in bankruptcy cases and has been found to apply in Code cases. *In Re Chattanooga Federal Savings & Loan Ass'n,* 2 C.B.C.2d 29 (Bankruptcy N.D.Ga.1980).

In this court, as in other courts, petitions for rehearing or motions for a new trial must comport with proper standards and meet the requirements of the Rules. See, *In Re Robinson,* 21 B.R. 454, 456 (Bkrtcy.W.D.Va.1982) and 58 Am.Jr.2d *New Trial* § 167. Under Rule 59(b) a motion for a new trial must be filed within ten days after the entry of judgment. The debtor has timely filed his motion for rehearing. The grounds for granting a new trial or rehearing in an action tried without a jury are broadly stated under FRCP 59(a)(2). A new trial may be granted "for any reason for which rehearings have been granted in suits in equity in the Courts of the United States".

Motions to vacate orders, motions for rehearings or for new trials, and like motions are addressed to the discretion of the trial court and are intended to call its attention to errors allegedly committed *by it* and to afford an opportunity for their correction. *Jones v. Thompson, et. al.,* 128 F.2d 888, 889 (8th Cir.1942). See also, *In Re Marachowsky Stores Co.,* 188 F.2d 686, 689 (7th Cir.1951).

In this case the debtor asserts that the "attorneys for both the creditor and the debtor misinformed the Court as to the very terms of the debtor's plan" and that the conveyance of this misinformation to the Court or "the failure of the attorneys to notify the Court as to the plain facts as stated in the record" was error. Thus, the debtor is asserting that if his attorney had been aware of certain information he would have reached a conclusion other than voluntary dismissal of his case. The debtor does not now assert there is newly discovered evidence which might entitle him to a new trial but that his evidence or information was available in the record and mistakenly or inadvertently not revealed to the Court. He does not specifically state whether this information was unknown to or simply forgotten by his attorney at the time of the hearing.

Since the debtor and his attorney formulated the plan of arrangement which was filed July 27, 1982 they could reasonably be expected to be familiar with its contents; namely, into how many classes the plan was divided and what constituted an assenting

(C) With respect to a class of interests—
   (i) the plan provides that each holder of an interest of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, and the value of such interest; or
   (ii) the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.
(c) Notwithstanding subsections (a) and (b) of this section and except as provided in section

1127(b) of this title, the court may confirm only one plan, unless the order of confirmation in the case has been revoked under section 1144 of this title. If the requirements of subsection (a) and (b) of this section are met with respect to more than one plan, the court shall consider the preferences of creditors and equity security holders in determining which plan to confirm.
(d) Notwithstanding any other provision of this section, on request of a party in interest that is a governmental unit, the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of section 5 of the Securities Act of 1983 (15 U.S.C. 77e).

class. That information goes to the very essence of a confirmation hearing and ultimately the ability of the attorney for the debtor to utilize the cram-down provisions of § 1129(b) of the Bankruptcy Code. Absent an assenting class, the plan fails. It seems self-evident that an attorney for a Chapter 11 debtor, whose representation culminates in the submission of the plan of arrangement and the confirmation of that plan, would familiarize himself with whatever information and facts would be necessary to invoke the cram-down provisions of § 1129(b) of the Bankruptcy Code and defeat an objecting creditor.

■ It is necessary that the petitioner show that he is entitled to a new hearing or new trial because he was unable even with reasonable diligence to discover and produce such evidence or information at the hearing or trial. "The hardship of the particular case cannot weigh against the rule preventing one who has had a full and fair opportunity to prepare his case from dragging out the litigation by bringing in evidence which, with due diligence, he ought to have discovered before the hearing."

2. Transcript of the hearing as follows:
THE COURT: In the matter of William E. Everett in proceedings under Chapter 11 of the Bankruptcy Code—Number BA 82–18.
Before the Court is the matter of the sufficiency of the disclosure statement and confirmation of the Chapter 11 Plan of Reorganization.
Robert J. Brown appears for the debtor, and James E. Smith, Jr., for the objecting creditor.
Now, does your objection go to the sufficiency of the disclosure statement?
MR. SMITH: I have no objection to the disclosure statement, Your Honor.
THE COURT: Let's hear, now, the summary of the balloting in this case.
MR. BROWN: Well, Judge, when we reviewed the case file, it showed three people casting unsecured ballots. Pardon me—there are three ballots in there, and two voted for the plan unsecured.
It would be one hundred percent of the unsecured class with One Thousand, Eight Hundred and Fifty Dollars in amount voting for it and no other balloting. But I am informed that, just a few minutes before this hearing, Mr. Smith has elected to file an unsecured ballot—
MR. SMITH: An unsecured claim, Your Honor, in the amount of Seven Thousand Eighty-Six Dollars and Thirty-Six Cents—rejecting the plan of arrangement.

*Toledo Scale Co. v. Computing Scale Co.,* 261 U.S. 399, 43 S.Ct. 458, 67 L.Ed. 719 (1923). See 58 Am.Jur. *New Trial,* § 168, p. 381.

Further, where a new trial has been sought to permit the introduction of evidence known at the time of the first trial but not introduced thereat because of the forgetfulness of the moving party's counsel, it has been held that such evidence is not within the scope of the principle permitting the grant of a new trial on the grounds of newly discovered evidence. 58 Am.Jur., *New Trial* § 169, pp. 383–384.

Here counsel for the debtor in consultation with the debtor submitted the plan of arrangement and, at least at one time, must have been aware of the facts therein. The transcript of the proceedings, which has been ordered by this Court and filed indicates that the attorney for the debtor did not ask for a recess in order to re-check balloting or refresh his memory as to the actual contents of the plan which might have led him to a conclusion other than voluntary dismissal of his case.[2]

THE COURT: What is the total accepting—before we accept this ballot, what's the total accepting—
MR. BROWN: One Thousand, Eight Hundred Fifty Dollars—two votes. It would be a hundred percent of each.
MR. SMITH: I would object—
THE COURT: He is now going to file the unsecured rejection which will destroy the acceptance of this class.
MR. BROWN: Yes, sir.
MR. SMITH: I would also object to the ballot of John B. Driver, Esquire, being counted. Mr. Driver represents—or has represented the debtor in matters pertaining to issues involved in this bankruptcy proceeding.
THE COURT: Well, we may not have to get to that because I don't see as we have an actual assenting class.
MR. SMITH: There has been no bar date posted for balloting.
THE COURT: Well, they have to be filed, under the law, before the conclusion of the confirmation hearing.
MR. SMITH: Yes, sir.
THE COURT: I don't see that we have a necessary actual assenting class to be able to go on with the confirmation in this case. Do we, Mr. Brown?
MR. BROWN: May I have one minute, Judge, I want to check one thing?

■ The Court, thus concludes that the debtor's first ground asserting that he is entitled to a new trial based on "error of fact" must be rejected. The assertions proffered by the debtor do not constitute "newly discovered evidence" but rather forgotten facts by the debtor's attorney. This Court finds no basis under Rule 59 or case authority to support the arguments of counsel for it to grant this petition and now hear additional facts. See, in this regard, *In Re Ocean Developments of America, Inc.,* 24 B.R. 51 (Bkrtcy.S.D.Fla.1982) citing 11 Wright and Miller, *Federal Practice and Procedure:* Civil § 2808, 2859 and 2864.

The second ground raised by the debtor in support of his petition for rehearing is that the case was improperly dismissed without notice as required by 11 U.S.C. § 1112 and Interim Bankruptcy Rule 2002. He asserts that Rule 2002 requires twenty days notice for a hearing on dismissal claiming he received no notice of dismissal. He now claims such procedure was plan "error of law". See p. 3 of letter brief submitted for the debtor.

Voluntary dismissal of a Chapter 11 petition is governed by § 1112(b) of the Bankruptcy Code which provides in pertinent part:

"Except as provided in subsection (c) of this section, on request of a party in interest, *and after notice and a hearing,* the Court *may* convert a case under Chapter 7 of this title *or may dismiss* a case under this chapter, *whichever is in the best interest of creditors and the es-*tate . . (emphasis supplied).

The Interim Rules of Bankruptcy Procedures, specifically Rule 2002(b)(4), provide that the Clerk of the Bankruptcy Court shall give all creditors, equity security holders and indenture trustees at least 20 days notice by mail of a hearing on dismissal or conversion of a Chapter 11 case *when notice is required by § 1112(b)* (emphasis supplied).

■ While the Court may only convert or dismiss a Chapter 11 case "after notice and a hearing" such term, as construed in § 102(1) of the Bankruptcy Code requires an opportunity for a hearing or *such notice as is appropriate under the circumstances.*

In 58 A.Jur.2d *Error in Law,* § 115, p. 323 it is stated:

Error in law occurring at the trial, *when excepted to by the party making the application for new trial,* is one of the

MR. SMITH: Your Honor, we did not receive a ballot until the middle of November.

THE COURT: Well, he hasn't challenged your ballot so far.

MR. BROWN: I was under the impression that they were in a secured class—is what I was checking. And I was wondering how they were casting an unsecured claim—that is what I was looking for.

MR. SMITH: We had a—we had a claim—we also cast a secured ballot. I filed a Proof of Claim for a secured claim in the amount of Forty-Seven Thousand Dollars—unsecured in the amount of Seven Thousand, Eighty-Six Dollars and Thirty-Six Cents. This is based on a judgment rendered November 12, 1980, with interest at ten percent from date. The unsecured portion represents the deficiency.

THE COURT: Well, I think he challenges your classification as unsecured creditor. So, do you want to put on evidence that will establish your status as an unsecured creditor?

MR. SMITH: Your Honor, the debtor, in his plan of arrangement, has valued our collateral at Forty Thousand Dollars. We have a judgment of record in the amount of Forty-Seven Thousand Dollars—

THE COURT: This is all evidentiary. You're stating evidentiary facts now. So, I think you probably better go on with your evidence.

MR. SMITH: Your Honor, I would like to call William E. Everett to the stand.

MR. BROWN: Your Honor, after consultation with Mr. Everett, we are prepared to concur in the representations of Mr. Smith that Forty thousand is secured and the balance—or—we say Forty Thousand is secured—

MR. SMITH: Forty-Seven Thousand—

MR. BROWN: And whatever—and that that is sufficient to—for the creditor—Parts whatever—to bust this plan.

THE COURT: So, what do you want me to do on this case?

MR. BROWN: It should be dismissed without prejudice, Your Honor.

MR. SMITH: No objection, Your Honor.

MR. BROWN: And with no particular intention of this lawyer to refile it.

THE COURT: All right. The matter of William E. Everett is dismissed.

(Whereupon, the proceedings of the captioned hearing were concluded.)

usual grounds for a new trial ... The term "error in law" thus used, embraces erroneous rulings and instructions of the Court, and rulings of the Judge during the trial of a case, may, in many situations, afford grounds for the granting of an application for a new trial ... (emphasis added).

The transcript of the December 10, 1982 hearing indicates that the Court made no erroneous ruling on the issue now raised by the debtor in his request for a new confirmation hearing. The issue of whether the debtor's voluntary dismissal required a new hearing was not raised at the hearing. Counsel for the debtor voluntarily moved to dismiss the Chapter 11 case without prejudice and stated he had "no particular intention ... to refile it." (T. p. 6)

The Court, upon reviewing all of the files and pleadings in this case observes that the debtor and all creditors had previously been put on notice that these Chapter 11 proceedings could be dismissed. Since the filing of this Chapter 11 petition, April 27, 1982, the debtor had filed only one monthly operating report which is required by Rule 11–30 of the Rules of Bankruptcy Procedures. All creditors received notice of possible dismissal of these proceedings August 11, 1982 because the debtor had not complied with this rule. Furthermore, the only secured as well as major unsecured creditor, Parts, Inc., (holding $40,000.00 secured debt and $7,500.00 unsecured debt; the only other debts being $18,500.00 unsecured debt) asked that the case be dismissed with prejudice in its objection to confirmation filed October 21, 1982. That objection and motion to dismiss were still pending before the Court at the time of the confirmation hearing.

Thus, contrary to the statement of the debtor in the brief submitted to the Court, the debtor was on notice that a creditor was asking for dismissal of the case and that dismissal was an alternative available to the Court as well as the parties. *Matter of Georgetown Apartments,* 468 F.Supp. 844 (M.D.Fla.1979). A close review of the record in that case revealed that, although the Bankruptcy Court did not give written notice in the most explicit terms that dismissal was to be considered; nevertheless, the parties were aware that such could be the result and more particularly so if all parties were in agreement.

The debtor did not consent to a dismissal of these Chapter 11 proceedings with prejudice, as requested by the creditor, but acknowledged the failure of his plan and agreed to a dismissal without prejudice presumably to preserve his right to refile his petition if circumstances so dictated. The Court would also point out that there was no indication at the hearing that the debtor was contemplating any future modification of the plan as he is now suggesting in his brief. (By his own pleadings regarding income and expenses, the court would observe that there seems to be little margin for modification of the plan.)

■ The debtor, having been on notice that dismissal was an alternative available to the court at the hearing and having voluntarily asked for dismissal without prejudice, is thus not now in a position to argue that he was denied due process of law in the proceedings before the Bankruptcy Court. Therefore this Court would also reject his second ground for a new hearing. A voluntary dismissal by a party does not operate as an adjudication upon the merits and the party was and still is free to re-file his petition.

Accordingly, for the foregoing reasons, it is hereby

ADJUDGED that the debtor's Motion for rehearing and New Trial and Motion for Relief from Order Dismissing Chapter 11 proceedings be denied.