**In the Matter of LINCOLN PLAZA TOWERS ASSOCIATES, Debtor.**

**Bankruptcy No. 79 B 51.**

United States Bankruptcy Court, S. D. New York.

Dec. 13, 1979.

**468**

Gelberg & Kronovet, New York City, for debtor; Marc S. Kirschner, Saul Duff Kronovet, New York City, of counsel.

Krause, Hirsch & Gross, New York City, for debtor; William Lowy, New York City, of counsel.

Richard A. Gerard, Zalkin, Rodin & Goodman, New York City, for Jamaica Sav. Bank; Richard Toder, Henry Goodman, New York City, of counsel.

## OPINION

JOEL LEWITTES, Bankruptcy Judge.

This is a motion by Jamaica Savings Bank ("Jamaica"), a member of the Federal Home Loan Bank of New York, and the sole secured creditor of the Chapter XII debtor, Lincoln Plaza Towers Associates ("debtor"), to dismiss this Chapter XII case.[1]

Of the many legal contentions urged upon us by Jamaica, in support of this motion, it is, in our judgment, necessary to consider but one: whether the debtor's plan improperly impairs and extends the secured obligation held by Jamaica upon the debtor's rental premises in contravention of Bankruptcy Act § 517.[2]

Bankruptcy Act § 517, in pertinent part provides that no provision in Chapter XII

> "[s]hall . . . be deemed to allow extension or impairment of any secured obligation held by . . . any Federal Home Loan Bank or member thereof."

---

1. On January 10, 1979, the debtor filed its Chapter XII petition in accordance with the provisions of Bankruptcy Act § 406(9), 11 U.S.C. § 806(9) and Bankruptcy Rule 12–6, 421 U.S. 1094.

2. 11 U.S.C. § 917.

It should be noted, in connection with the instant motion, that Jamaica claims, as well, that this case should be dismissed since it, as the sole secured creditor of the debtor, has rejected the latter's Plan. This Court has previously held otherwise and, for the reasons set forth in *Matter of Mallard Associates*, 20 C.B.C. 1061 (S.D.N.Y.1979) (Bankruptcy Court), *aff'd* 475 F.Supp. 1045 (S.D.N.Y.1979), adheres to its determination there.

## A

### Background of this Chapter XII Case

The debtor is a New York limited partnership[3] whose primary, if not sole asset,[4] is a multi-story rental apartment building located at 44 West 62nd Street, New York City together with a lease of the land upon which that building is situated.

The premises are encumbered by a first mortgage on the leasehold, dated June 30, 1971, held by Jamaica in the amount of $6,000,000 which mortgage subsequently was consolidated, on August 16, 1974, with a second mortgage in the amount of $375,-000 also held by Jamaica. As consolidated, these mortgages were the subject of an Extension Agreement dated August 16, 1974.[5]

In addition to the principal balance of $6,375,000 on the consolidated mortgage, there is presently owing to Jamaica accrued interest, taxes and other fees in the approximate amount of $2,125,000.

On December 8, 1978, a judgment of foreclosure and sale, in favor of Jamaica, was entered in the Supreme Court of the State of New York, County of New York, pursuant to which Jamaica was granted judgment in the amount of $8,454,710.81 with interest thereon from December 7, 1978.

The debtor appealed from that order but its application for a stay, pending determination of that appeal, was unanimously denied by the Appellate Division, First Department on January 9, 1979.[6]

As noted above, the debtor, on January 10, 1979, filed its Chapter XII petition. The debtor, by such filing, was automatically granted a stay of the state court order of foreclosure and sale which was denied it by the State Appellate Division.[7]

By notice of motion dated February 14, 1979, Jamaica applied to this Court for an order requiring the debtor to file its Plan and have the Court fix a date for the filing of either acceptances to, or rejections of, the Plan. This motion was granted.

Following the filing of the Plan and Jamaica's rejection thereof, Jamaica, on April 3, 1979, made the present motion to dismiss the Chapter XII case.

On June 15, 1979 the debtor amended its plan which, unsurprisingly, was promptly rejected by Jamaica.

On June 20, 1979 Jamaica filed its objections to confirmation of the Amended Plan on substantially the same grounds relied upon it in the motion to dismiss.

Over the objections of Jamaica, my predecessor colleague permitted the confirmation hearings to proceed to conclusion without determination of the motion to dismiss.

At or about the time of my predecessor's resignation as Bankruptcy Judge in late September 1979, this case was referred to me in accordance with the established procedures of the District Court.

When this case first appeared on my calendar, Jamaica urged this Court to proceed first to a determination of Jamaica's motion to dismiss. The debtor, on the other hand, maintained that in light of the fact that confirmation hearings were held before my predecessor, which in part subsumed the issues raised on the dismissal motion, the Court's determination should encompass, as well, the merits of the Amended Plan.

In my view, since Jamaica's objection under Bankruptcy Act § 517 must be upheld,

---

3.  N.Y.Partnership Law § 90 *et seq.*, (McKinney).

4.  The debtor contends that its other "assets" consist of claims against Jamaica and one Ronald Spielberger.

5.  The sequence of transactions culminating in the debtor's interest in the subject premises is more particularly set forth in the State Court decision upholding the validity of Jamaica's mortgage. *Jamaica Savings Bank v. Lincoln*

*Plaza, Inc., et al.,* 181 N.Y.L.J. 13 (1978). That opinion is reproduced in exhibit "1" annexed to the instant motion to dismiss.

6.  A copy of the order of the Appellate Division is annexed, as exhibit "2" to the motion to dismiss.

7.  Bankruptcy Rule 12–43(a), 421 U.S. 1116.

the debtor's invitation to rule on confirmation is not accepted.[8]

## B

### The Debtor's Amended Plan

This Plan classifies creditors into three distinct groups: Class I consisting of Jamaica, "providing that said mortgage is ultimately held valid"; Class II consisting of creditors holding administration and priority claims; and Class III consisting of all general and unsecured creditors having provable and allowable claims, "including Jamaica if its alleged mortgage is held to be invalid."

In a preamble to this Plan, entitled "Purpose and Goal of Plan", the debtor proposes to create a Fund "[p]ending a determination of the validity of Jamaica's alleged mortgage", to be deposited in Court in the amount of $8,454,410.81, together with an amount equal to 8¾% on the principal balance of $6,375,000. If Jamaica's mortgage is fully determined to be valid, Jamaica will be paid the entire amount of indebtedness due it out of such Fund. In the event that Jamaica's mortgage is held to be invalid, the Fund will be used to pay other creditors including Jamaica as an unsecured Class III creditor.

The "Purpose and Goal" of the Plan will be put into effect on the consummation date (which for all practical purposes coincides with the day after the order of confirmation is signed) and will be effectuated by the "debtor's (a) placing a new first mortgage on the property, (b) adopting and carrying out a sale of the Premises under a co-operative plan and (c) establishing the Fund (which must be established, in all events, not later than 15 months after the Consummation Date).[9]

## C

### The Amended Plan and Bankruptcy Act § 517: An Impermissible Extension

Bankruptcy Act § 517, quoted in part, above, reads as follows:

"Nothing contained in this Chapter [12] shall be deemed to affect or apply to the creditors of any debtor under a mortgage insured pursuant to the National Housing Act and Acts amendatory thereof and supplementary thereto; nor shall its provisions be deemed to allow extension[s] or impairment of any secured obligation held by Home Owner's Loan Corporation or by any Federal Home Loan Bank or member thereof." [10]

Unlike the first clause of Bankruptcy Act § 517, which *totally* excepts the application of Chapter XII to all mortgages insured under the National Housing Act,[11] the second clause thereof *only* insulates mortgages held by Federal Home Loan Bank members from provisions of a Chapter XII *plan* which effect an impairment or extension of such mortgages.[12]

---

8. In the event that this Court would choose to decide the issues raised at the evidentiary hearing on confirmation, both parties to this controversy *stipulated* to permit me to determine the merits on the "cold record." *Cf. Dickman v. Schoenfeld*, 608 F.2d 930, No. 79 B 5007 (2d Cir. Oct. 12, 1979).

9. Essentially, the Amended Plan differs from the original one propounded, only to the extent that the latter provided for the establishment of the Fund "not later than *18* months after the Consummation Date." (emphasis supplied).

10. The Home Owner's Loan Corporation was abolished and dissolved subsequent to the enactment of § 517. See Act June 30, 1953 C. 170 § 21, 67 Stat. 126.

11. *In re Consolidated Motor Inns*, 5 C.B.C. 301, 304 (N.D.Ga.1975) (Bankruptcy Court), *aff'd*

No. B75–296A (N.D.Ga. Oct. 8, 1975); *In re Hall Associates*, 8 C.B.C. 290, 293 (E.D.Pa. 1976) (Bankruptcy Court); *In re Flushing Mall Co. et al.*, 5 Bank.Ct.Dec. 524, 530 n. 28 (S.D.N.Y.1979) (Bankruptcy Court) *appeal pending; Cf. Monte Vista Lodge v. Guardian Life Insurance Co. of America*, 384 F.2d 126 (9th Cir. 1967) (Chapter X case).

12. *In re 83rd Realty Company*, No. 76 B 1922 (S.D.N.Y. April 14, 1978), Bank.L.Rep. (CCH) ¶ 66,862 (summary); *In re Consolidated Motor Inns, supra* at 308; *Matter of Carousel Limited Partnership*, 14 C.B.C. 521, 525 (N.D.Ga.1977) (Bankruptcy Court); *In re I. L. D.—72 Associates*, 15 C.B.C. 668, 671, (N.D. Ga.1977) (Bankruptcy Court); *In re Smith, Jr.*, 20 C.B.C. 368, 369 (E.D.Pa.1979).

Thus, unlike the debtor whose property is encumbered by a mortgage insured under the

■ The question presented for resolution here, accordingly, is whether the debtor's Amended Plan impermissibly extends Jamaica's mortgage.[13]

Both parties to this dispute appear to accept the analysis and definition of the term "extension" expounded by the Court in *In re Consolidated Motor Inns.*[14]

In that case the bankruptcy judge observed that the word "extension", at least in the context of insolvency proceedings, has long been recognized to mean "a plan under which debts are paid in full but over a longer period of time than would *otherwise be required.* . . ."[15]

It appears, therefore, that the battle lines are narrowly drawn here over *when,* in this case, payment in full of the obligations is required.

Jamaica urges that the obligation is *now* due and owing since it holds a Judgment of Foreclosure and Sale (albeit stayed by this Chapter XII case), which requires the immediate and unconditional payment of $8,454,710.81, and interest from December 7, 1978, in order for the debtor to retain the subject premises. Accordingly, Jamaica maintains, that to the extent that the debtor's Plan provides for a moratorium of 15 months after the Consummation Date of the Plan, pending the happenstance of a conversion of the premises to a co-operative apartment house, Jamaica's obligation will

be extended in violation of Bankruptcy Act § 517.

■ The debtor argues, however, that the 15 month moratorium in its Plan does not amount to an extension since the secured obligation, including interest, will be paid in full well before the August 16, 1994 maturity date set forth in the mortgage instrument.[16] All that is "deferred", says the debtor, is the amortization of interest until the debtor's proposed co-operative conversion becomes effective.

We cannot agree with the debtor.

■ The terms of the Extension Agreement of August 16, 1974 clearly provide that

"the whole of said principal sum and interest shall become due at the option of [Jamaica] . . . : after default in the payment of any installment of principal, or of interest for fifteen days. . . ."[17]

Jamaica's mortgage lien was, as noted earlier, held valid by a court of competent jurisdiction and a Judgment of Foreclosure and Sale was entered. By force of the Extension Agreement, and by reason of the debtor's acknowledged defaults thereunder, Jamaica is entitled now to payment on its secured obligation. The provisions of the Plan extending payment of principal and interest for 15 months beyond confirmation

National Housing Act, a debtor whose mortgagee is a Federal Home Loan Bank member, is entitled to a respite granted to him by the automatic stay provisions of Chapter XII at least until promulgation of his plan.

13. In order to demonstrate the existence of an "impairment", it is incumbent upon Jamaica to factually convince the Court "that the security for the obligations to it is depreciating or being diminished in value or that it is inadequately secured." *In re Consolidated Motor Inns, supra* at 308. In the absence, as here, of a factual hearing on those issues, this Court has no present basis for evaluating the question of impairment.

14. *Supra* at 307.

15. *Ibid.* (emphasis supplied).

16. We must reject, out of hand, the debtor's argument, in this regard, that Jamaica's mortgage cannot be deemed to be extended by the Plan since it has not been finally determined, by the Appellate Courts, that such secured obligation is valid. It is too well established, to require an extended discussion, that the ". . . pendency of an appeal does not detract from the finality of the judgment . . ." *Raitport v. Commercial Banks Located Within This District,* 391 F.Supp. 584, 586 (S.D.N.Y. 1975). In any event, it must be noted that the Appellate Division, First Department, while this opinion was being composed, unanimously affirmed, on December 6, 1979, the Judgment of Foreclosure and Sale rendered by the State Supreme Court. *See* 182 N.Y.L.J. 6 (1979).

17. Extension Agreement, Par. 4.

necessarily and impermissibly, extend Jamaica's obligation.

To be sure, even if it be deemed that the full amount of principal and interest did not immediately fall due, by reason of the debtor's defaults and the Judgment of Foreclosure and Sale, the debtor cannot succeed here.

█ The Extension Agreement obligates the debtor to pay *monthly* installments in liquidation of interest and principal. The October 1, 1974 installment was never paid in full and no payments were made thereafter by the debtor under that agreement.

It is true that the Court observed that there is no "extension" if the debtor ". . . will pay [under its Plan] *all the* obligations within the time permitted by the instruments creating them." [18] But the debtor misconstrues this pronouncement to mean that the obligation to pay is the obligation to pay the full amount on or before the maturity date of the instrument. Thus the debtor would have us conclude, quite preposterously, that "it would be no extension for the debtor [here] to pay nothing until . . . [1994] when the last installment is due." [19]

The flaw, of course, in debtor's argument, is that it reads the term "obligation" to mean the principal amount of the debt plus interest due by the maturity date. But here, the "obligations" set forth in the Extension Agreement must be read to be the "legal duty" or duties owed by the parties to one another as reflected in the terms of the agreement.[20]

Thus, among the obligations enumerated in the Extension Agreement, is the clear legal duty of the debtor to timely pay Jamaica the monthly installments.[21] Any extension of such obligations, as proposed by the Plan here, must be deemed to be impermissible under Bankruptcy Act § 517.[22]

### D

### Conclusion

█ We hold, therefore, that since the debtor's Plan, in violation of the provisions of Bankruptcy Act § 517, extends the secured obligation of Jamaica, a member of the Federal Home Loan Bank, Jamaica's motion to dismiss this Chapter XII case is, in all respects, granted.

Settle order on notice. Such order is to provide in blank, for the sum to be inserted, for the account of the Bankruptcy Referee's Salary and Expense Fund, The Electronic Process Inc., and the Court Reporter.

The prepared order is to provide as well, that the Clerk of this Court give notice of the dismissal of this case pursuant to the provisions of Bankruptcy Rule 12–23(b), 421 U.S. 1100.

---

**18.** *In re Consolidated Motor Inns, supra* at 308 (emphasis supplied).

**19.** *In re I.L.D.—72 Associates, supra* at 671.

**20.** See 1 Corbin on Contracts § 2 at 4 (1963).

**21.** As the Court observed in *In re I.L.D.—72 Associates, supra* at 671, "[i]t probably would not be an extension of the secured obligations if the arrearages were to be paid in full at

confirmation and full payments made thereafter." Clearly, in this case, the debtor's Plan invokes a 15 month moratorium from confirmation.

**22.** In my view, the Court in *In re Smith, Jr., supra* failed to discern that the payment schedule under the mortgage there was itself an obligation that could not be extended.