**In re Robert Daniel LEAL and Veronica June Leal, Debtors.**

**Bankruptcy No. 80 B 03240 M.**

United States Bankruptcy Court, D. Colorado.

Nov. 26, 1980.

Milnor H. Senior, III, Denver, Colo., for debtors.

Janet G. MacFarlane, Denver, Colo., trustee.

James E. Brown, Denver, Colo., for Ford Motor Credit Co.

Hubert T. Morrow, II, Littleton, Colo., for Fidelity Financial Services, Inc.

MEMORANDUM OPINION

JOHN P. MOORE, Bankruptcy Judge.

THIS MATTER arises upon the contested confirmation of the Debtors' Chapter 13

plan. During the course of the hearing on confirmation, creditor Fidelity Financial Services (Fidelity) objected to confirmation on the grounds that the plan was not proposed in good faith. As I believe that the issue here raised is vital to an understanding of the intent and purpose of Chapter 13, I have carefully considered the evidence, relevant case law, and implications of this decision. Having done so, I conclude the position taken by Fidelity is well founded.

On July 17, 1980, the Debtors purchased a new 1980 Ford Bronco for approximately $12,000.00. The down payment consisted of $1,000.00 borrowed from Fidelity and two cars which were traded in. The remainder of the purchase price of the Bronco was financed by Ford Motor Credit Company (Ford), which took a first lien in the vehicle. The Debtors gave Fidelity a security interest in certain of their household goods, and a second lien in the Bronco. The Debtors never made a payment to Fidelity, nor did they make any further payment to Ford.

Fifteen days later, on August 1, 1980, the Debtors executed a Chapter 13 plan, which, among other things, proposed to treat Fidelity as an unsecured creditor, valued the collateral held by Ford–the Bronco–at $8,600.00, and offered $1.00 per claim to 11 holders of unsecured claims whose debts were scheduled at $18,447.00. The Debtors' petition and plan were filed August 4, 1980. Subsequently, the plan was modified so that Ford would be paid the full amount owing to it outside the plan. Fidelity objected to confirmation on grounds of lack of good faith, as indicated by Debtors' alleged misrepresentations in applying for the loan from Fidelity, and the incurring of the Bronco–related debts just two weeks prior to filing for Chapter 13 relief.

■ Under present law, a debt incurred through fraud or false pretenses is not excepted from a § 1328(a) discharge. Thus, the alleged falsity of the values on the financial statement submitted to Fidelity would not bar discharge of that debt in a Chapter 13 proceeding. It is creditor's contention, however, that the false statements,

coupled with the short time that elapsed between the subject loan transactions and the filing of a Chapter 13 petition, indicate an ongoing scheme to use the bankruptcy law to deprive creditors of their property.

The issue faced by this Court is whether the requirement that a Chapter 13 plan be "proposed in good faith", § 1325(a)(3), was meant to deny confirmation in a situation such as the one at hand. Counsel for the Debtors contends that the good faith requirement refers only to whether or not the debtor has proposed to make substantial payment to creditors. Indeed, many courts have based a finding of good faith or lack thereof on the nature or amount of proposed payments, and whether they represent the debtor's best effort at paying off his creditors. Without accepting the reasoning set forth in these opinions, it is observed that nowhere is it stated that the size or nature of proposed payment should be the exclusive criterion by which good faith is measured. It is reasonable to conclude that the words "good faith" were also meant to be interpreted according to their plain meaning: that is, to require that the plan be proposed by an individual earnestly seeking relief from debts which were incurred with full intent to repay them, but which have become overwhelming. The antithesis of good faith would then be found in a debtor who incurred obligations *intending* never to satisfy them, but instead planning to discharge them in bankruptcy, using the law as a vehicle in a malevolent scheme to avoid repaying creditors.

Although there is a dearth of legislative history from which the congressional intent behind § 1325(a)(3) can be determined, the term "good faith" is not new to bankruptcy law. Section 141 of the Bankruptcy Act required that in order to avoid dismissal, a Chapter X petition for corporate reorganization must have been filed in good faith. Section 146 of the Act sets forth four specific criteria of good faith but emphasizes that the meaning of the term is not limited by these four tests. Cases interpreting §§ 141 and 146 have taken up this legislative gauntlet and have defined good faith in the broader terms the statute suggests.

The Court's opinion in *The Matter of Southern Land Title Corporation*, 301 F.Supp. 379 (E.D.La., 1969) dealt with the four elements of § 146, and then went on to state:

> Having determined that the petition satisfies all four of the negative statutory tests of good faith, we are faced only with the question of whether the general unspecified elements of good faith are lacking. Basically, the general elements of good faith, undefined in the statute, mean that the petition must be filed with the honest intent and genuine desire to utilize the provisions of Chapter X for its intended purpose–to effectuate a corporate reorganization–and not merely as a device to serve some sinister and unworthy purpose of the petitioner ... The Court cannot and will not tolerate such misuse of the reorganization process. 301 F.Supp. at 428.

The above language was adopted by the Court in the Fifth Circuit case of *In the Matter of Metropolitan Realty Corporation*, 433 F.2d 676 (1970), another Chapter X reorganization. After citing *Southern Land Title, supra*, the Court added:

> Section 146 of the Bankruptcy Act, 11 U.S.C. § 546, provides four indicia by which a court may determine whether a petition for reorganization has been filed in good faith. But the statute expressly states that the generality of the meaning of the term is not to be limited by the enumeration. Indeed, the generality of the term provides the bankruptcy court with a useful means of preserving the reorganization process for those cases for which it was actually intended.

Quoting *Mongiello Bros. Coal Corp. v. Houghtaling Properties, Inc.*, 309 F.2d 925 (5th Cir. 1962), the *Metropolitan* court went on to say:

> In considering the presence or absence of good faith, it must be borne in mind that the Act is not to be abused by the extension of its privileges to those not within the contemplation of it. 433 F.2d at 678, 679.

Chapter XII of the Bankruptcy Act also contained a requirement that an arrangement altering the rights of creditors secured by real estate had to be proposed in good faith. Bankr.Act § 472(4), 11 U.S.C.A. § 872(4). This provision was construed in *The Matter of Mallard Associates*, 475 F.Supp. 1045 (S.D.N.Y., 1979) as follows:

> Chapter XII requires that a petition must be filed in good faith. 11 U.S.C. § 872(4) ... a petition is not filed in good faith where the debtor fraudulently invokes the jurisdiction of the Bankruptcy Court ... The critical question must be whether the debtor here, in order to defraud its creditor, was 'organized and the property conveyed to it for the sole purpose of ... utilizing the Chapter ... [XII] proceeding.' 475 F.Supp. at 1049.

The above interpretations of Bankruptcy "good faith" are equally applicable to § 1325(a)(3). The very fact that there is no narrowing statutory definition of good faith may be taken as an indication that, as the *Mallard* court pointed out, *supra*, the Congress intended to provide Bankruptcy Courts with a discretionary means to preserve the Chapter 13 process "for those cases for which it was actually intended". Accordingly, when a Chapter 13 plan appears to carry the taint of questionable motives, it is incumbent upon the Bankruptcy Court to examine the attendant circumstances, and to withhold confirmation if there are unmistakable manifestations of bad faith, whether those manifestations are overt or implied.

The standard for "good faith" adopted here is not based upon a finding of actual fraud, which would require proof of malice, scienter, or intent to defraud. It simply requires courts to preserve the integrity of the Bankruptcy law by refusing to allow its use as part of a "sinister and unworthy" scheme. While this criterion demands the use of discretion, it is neither unmanageable nor revolutionary. Indeed, a Bankruptcy Court has the powers of a court of equity, 28 U.S.C. § 1481, which is traditionally called upon to administer the mandate that equity must be sought with "clean

hands". The good faith required here invokes a similar scrutiny of motive.

There is a panoply of exceptions to a Chapter 7 discharge found in § 523(a), some of which refuse discharge of a debt on the basis of debtor's wrongdoing. Confirmation of a Chapter 13 plan is not similarly conditioned upon good behavior at the time the debt was incurred. However, it is inconceivable that any bankruptcy laws were meant to allow unethical or inequitable schemes to avoid repayment of debts. Since § 523(a) does not apply to exorcise such abuses from Chapter 13 confirmation proceedings, the "good faith" requirement of § 1325(a) is the only safety valve available through which plans attempting to twist the law to malevolent ends may be cast out. The good faith test should be used accordingly.

The evidence shows that Fidelity was induced to lend over $1,000.00 in the belief that it was fully secured by valuable collateral. Within 17 days and before any increment of the loan was repaid, the Debtors filed a Chapter 13 petition. If this plan is confirmed, the effect would be to allow Debtors to retain the vehicle despite a loss to Fidelity of over $1,000.00 worth of collateral within a space of less than three weeks. Although no direct evidence has been presented, a strong and logical implication arises that Debtors never intended to repay the loan that enabled them to make a down payment and thus acquire the Bronco. The facts indicate a series of transactions surrounded by a distinct aura of bad faith, culminating in an attempt to obtain a Chapter 13 discharge for inequitable purposes which are not within the spirit or intent of Chapter 13. Accordingly, I conclude that the required good faith is not present, and confirmation must be denied.